**Livingston L. and Catharina B. BIDDLE, Appellants,**

v.

**C. Millicent CHATEL, Wise & Gilliat, Inc., et al., Appellees.**

**C. Millicent CHATEL, Wise & Gilliat, Inc., et al., Appellants,**

v.

**Livingston L. and Catharina B. BIDDLE, Appellees.**

**Nos. 13543, 13671.**

District of Columbia Court of Appeals.

Argued Feb. 8, 1979.

Decided Sept. 16, 1980.

Rehearing and Rehearing en banc Denied Oct. 15, 1980.

David P. Towey, Washington, D. C., with whom Richard S. Ewing, Washington, D. C., was on the briefs, for appellants in No. 13543 and appellees in No. 13671.

Thomas Pace, Washington, D. C., with whom James F. Jordan, Washington, D. C., was on the briefs, for appellees in No. 13543 and appellants in No. 13671.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This appeal arises from a dispute over alleged misrepresentations made to Livingston and Catharina Biddle concerning their right to use an alley providing access to a garage located on their then—newly—purchased Georgetown property. As plaintiffs in the trial court, the Biddles sought a declaratory judgment establishing the existence of a prescriptive easement over the alley as against Mrs. Muriel M. Yasuna, a neighbor and the titled owner of the alley. In the same action, the Biddles also sought compensatory and punitive damages for misrepresentation of access rights over the alley against defendants C. Millicent Chatel, Wise, and Gilliat, Inc. (a realty firm), and two of its agents (Micheline C. Liverman and William T. Cuddy) with whom the Biddles had dealt in purchasing their home (hereinafter collectively referred to as Cha-

tel). Suit also was brought against Mrs. Dorothy P. Wiggins, the previous owner of the Biddles' new property. Prior to trial, the easement matter was settled and Mrs. Yasuna was dropped as a defendant. The trial court also determined that Mrs. Wiggins had made no representations which had been relied upon by the Biddles, and she too was dropped from the action.

With only the Chatel defendants remaining in the nonjury trial which followed, and with the easement question having been settled, the issue narrowed to the Biddles' entitlement to compensatory damages for the alleged misrepresentations. Thus, a claim was asserted for $21,749.48 in attorney's fees allegedly incurred by the Biddles in litigating their right to the use of Mrs. Yasuna's alley.[1] After hearing testimony describing the representations made to the Biddles and the problems subsequently encountered with Mrs. Yasuna, and considering the parties' memoranda of law, the trial judge concluded that equity dictated that the Biddles recover legal fees incurred by them in the litigation with Mrs. Yasuna—which, as noted, had led to a pretrial settlement.

Ultimately, however, the court dismissed the case for failure of proof of damages. This result followed the court's rejection of the Biddles' various offers of proof. Initially, the court rejected proof of fees by counsel's own affidavit as denying Chatel the

opportunity to cross–examine. More significantly, the court then refused to allow counsel to testify regarding the nature and extent of fees purportedly generated in litigation against Mrs. Yasuna. The court considered such testimony to be violative of Canon 5 of the Code of Professional Responsibility. Additionally, the court expressed doubts about the Biddles' claim for fees allegedly incurred.[2]

The Biddles contend that given the trial court's finding of entitlement to attorney's fees as damages, the court erroneously rejected counsel's proffer of testimony regarding the value of the relevant legal services rendered, and thereafter improperly dismissed the case for failure of proof of damages. Chatel defends the propriety of the dismissal for failure of proof of damages, but challenges the trial court's initial finding of liability. Chatel argues that liability in this type of case properly must be limited to tortious wrongful involvement in litigation with a third party, while the trial court held merely that "equity" dictated recovery. Chatel argues that since there was no tort, the trial court's initial finding of entitlement to attorney's fees as compensatory damages was erroneous.

■■■ We affirm the trial court's ruling in favor of Chatel, but on grounds other than failure of proof ·of damages.[3] For

---

1. The trial judge ruled that the facts did not support the Biddles' claim against Chatel for punitive damages; that ruling has not been challenged on this appeal.

2. Illustratively, the trial judge stated:
   Further, there has been no proffer of any testimony by the plaintiffs or experts which would indicate any opinion as to the value of services in this area, or whether or not secretarial services were considered as part of the overhead or charged to the client directly; additionally, there has been no testimony that a bill was ever sent and/or paid or refused to be paid. In fact, quite to the contrary, it has been admitted that no bill has been sent.

3. While we find no fault with the trial court's refusal to allow proof by counsel's affidavit, we disagree with its ruling that "professional ethics would prohibit the [Biddles'] attorney from testifying as a witness with regard to the value

of the services rendered by him." Such testimony is authorized by DR 5–101(B)(3), which allows a lawyer to testify "[i]f the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client." As Opinion No. 44 of the Legal Ethics Committee of the District of Columbia Bar (1978) correctly notes, the general prohibition against testimony by an attorney expressed in DR 5–101 is designed primarily to protect the client and properly may be waived by him. While the reasonableness of the legal fees was contested in this case, we note that such is commonly a contested matter, and DR 5–101(B)(3) does not rule out counsel's testimony for that reason.

At the same time, however, we share the trial court's concern with respect to admitting such testimony as to legal fees in a situation where, as here, virtually nothing of the claimed fee has been paid or even billed. In such a situation, we find it difficult to rationalize the award of

reasons which we set forth below, we agree with Chatel that the trial court erred in finding the Biddles to be entitled to recover attorney's fees in the first place. We then adhere to the settled rule that, "in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'" *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943), quoting from *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937).

## I

The testimony of the Biddles reflected that the couple approached agents of the Chatel firm in an effort to find a house in Georgetown with a garage. The Biddles made it clear to Chatel that their major concern in seeking to move from the Georgetown home in which they were living was their desire to have a garage, and Chatel undertook to search for something appropriate.

Among the homes the Chatel agents found was one at 2914 P Street—which the Biddles eventually purchased. When the Biddles initially visited this home with the Chatel agents, they observed that the garage was located behind the house and that the only access to it was through an alley opening onto O Street. The Biddles asked specifically about the access through the alley and were assured that they would enjoy unencumbered access—that indeed it was a public alley. On cross–examination as to whether the Chatel agents actually had represented the alley as public, the

Biddles insisted that they had. There was no rebuttal evidence by Chatel on this point, and the trial judge found as a fact that they had so represented. He also found the other essential facts to be as outlined above.

Some months after the Biddles purchased the home and occupied it, a neighbor—Mrs. Yasuna—notified them that she owned the alley and that they would have to pay rent for its use.[4] The Biddles immediately requested and received Mrs. Yasuna's permission to continue using the alley while the matter was taken up with Chatel. When the Biddles informed Chatel of the problem, they first were assured that Mrs. Yasuna's claim of ownership was specious. Subsequently, however, the Biddles were informed that in fact Mrs. Yasuna did hold title to the alley, that there was no recorded right of access in favor of the Biddles' property, and that Chatel was not responsible for the mistake since the alley was not mentioned in the Biddles' deed. At that point, some six months after having received Mrs. Yasuna's note and attempting to settle the matter through Chatel and Chatel's attorneys, the Biddles engaged their own counsel. After further attempts at settlement proved fruitless, the Biddles filed suit.

Shortly thereafter the trial judge granted a motion by Chatel requesting that the Biddles' claim against Mrs. Yasuna to establish the existence of a prescriptive easement over the alley be severed from the remaining claims and tried first. Then Chatel, Mrs. Wiggins (the former owner of the property who later was dismissed from the

attorney's fees as compensatory damages in a tort action absent any showing that the party who has been wronged has been injured as well. Although we would not go so far as to insist that the plaintiff in such a case prove that he has paid his attorney, we believe that the trial court should require a showing that liability to pay the amount claimed as damages has been incurred. *See Brem v. United States Fidelity & Guaranty Co.*, D.C.App., 206 A.2d 404, 407 (1965). An obvious way to prove liability to pay, of course, is to produce a bill, *e. g., Roland v. Krazy Glue, Inc.*, 342 So.2d 383, 385 (Ala.Civ.App.1977), although the admissi-

bility of alternative modes of proof should be left to the discretion of the trial judge who then would have to determine—independently of the amount charged—that the amount of legal fees awarded to the injured party is reasonable.

In its appeal Chatel raises two additional challenges to rulings by the trial judge. We find no merit in either and, since we affirm on other grounds, we discuss them no further.

4. The Biddles introduced documents—over Chatel's objection—showing that the Chatel agency had arranged the sale of the lot on which the alley is located to Mrs. Yasuna in 1966.

suit), and the Biddles moved for summary judgment against Mrs. Yasuna on her claim of ownership, asserting that a prescriptive easement over the alley had inhered in favor of the Biddles' property by virtue of open, notorious, and uninterrupted use for the fifteen–year statutory period. *See* D.C. Code 1973, § 12–301. Finding a genuine issue of material fact, the judge denied the motion. However, before this question reached trial the parties settled the matter of access–thus eliminating Mrs. Yasuna from the case. Specifically, Mrs. Yasuna granted the desired easement in favor of the Biddle property in consideration of (1) a cash payment by Chatel and (2) the Biddles' agreement to dismiss Mrs. Yasuna from the suit.[5] Thereafter the Biddles' suit against Chatel proceeded on the attorney's fees issue.

## II

As a general rule, attorney's fees and expenses incurred by a plaintiff in the successful litigation of a claim against a defendant are not recoverable as damages absent a contractual or statutory basis for liability. *See, e. g., Roadway Express, Inc. v. Piper,* —— U.S. ——, ——, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Sundown, Inc. v. Canal Square Associates,* D.C.App., 390 A.2d 421, 430 (1978); *Brem v. United States Fidelity & Guaranty Co., supra* note 3, at 407; *Highland Underwriters Insurance Co. v. Eleganté Inns, Inc.,* 361 So.2d 1060, 1065–66 (Ala.1978); *Hill v. Okay Construction Co.,* 312 Minn. 324, 252 N.W.2d 107, 121 (Minn.1977); *Coopers and Lybrand v. Levitt,* 52 App.Div.2d 493, 496–97, 384 N.Y.S.2d 804, 806–07 (1st Dep't 1976); *Prentice v. North American Title Guaranty Corp.,* 59 Cal.2d 618, 620, 381 P.2d 645, 647, 30 Cal. Rptr. 821, 823 (1963) (en banc). An exception to this rule, on which the Biddles

ground their claim for recovery, is recognized in this jurisdiction, as in most others. As formulated by this court in *Brem, supra* note 3:

> Where the plaintiff seeks in a separate action to recover attorney [*sic*] fees incurred by him in earlier litigation with a third person arising out of the tortious act of the defendant, it has been held that if the natural and proximate consequences of the defendant's tortious act were to involve the plaintiff in litigation with a third person, reasonable compensation for attorney's fees incurred by the plaintiff may be recovered as damages against the author of the tortious act. [206 A.2d at 407 (footnote omitted).][6]

While on the surface it would seem that the Biddles' involvement in these legal proceedings would fall within the exception, the limitations which exist upon the exception compel a contrary result. Consequently, the Biddles, like most plaintiffs, must pay their own lawyers.

The wrongful involvement in litigation exception to the general rule that parties bear their own legal expenses is narrowly defined. In order to recover attorney's fees under the exception, the following elements are necessary:

(1) The plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action;

(2) the litigation ordinarily must have been with a third party and not with the defendant in the present action; and

(3) the plaintiff must have become involved in such litigation because of some tortious act of the defendant.

*See, e. g., Highland Underwriters Insurance Co. v. Eleganté Inns, Inc., supra,* 361 So.2d at 1066. While we question whether the

---

5. At oral argument, counsel for Chatel stated that Chatel had paid $10,000 to Mrs. Yasuna as part of the settlement on the easement problem.

6. *Cf.* Restatement of Torts § 914 (1939), which provides:

> A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred.

*See also* Annot., 45 A.L.R.2d 1183 (1956); 22 Am.Jur.2d *Damages* § 166 (1965); 25 C.J.S. *Damages* § 50e (1966).

sequence of events in this case could satisfy either the first or third of these elements, it is the Biddles' inability to comply with the second—*i. e.*, by showing that their dispute was not with Chatel at the outset—which controls our resolution of these appeals.

With respect to the first limitation on recovery of legal fees as tort damages, the Biddles did not incur expenses in the course of prior litigation with a third party, but rather sued Mrs. Yasuna and the Chatel defendants at the same time. We are aware of the California Supreme Court's admonition in *Prentice v. North American Title Guaranty Corp., supra,* that

> there is no reason why recovery of such fees should be denied simply because the two causes (the one against the third person and the one against the party whose breach of duty made it necessary for the plaintiff to sue the third person) are tried in the same court at the same time. [59 Cal.2d at 620, 381 P.2d at 647, 30 Cal.Rptr. at 823.]

Nonetheless, we also are aware that in its own jurisdiction *Prentice* has been limited to its facts and has been applied only where, but for the award of attorney's fees, the party responsible for the original litigation would escape all liability, except for costs. *Davis v. Air Technical Industries, Inc.,* 22 Cal.3d 1, 6, 582 P.2d 1010, 1013, 148 Cal.Rptr. 419, 422 (1978) (en banc). In this case, of course, Chatel did not emerge unscathed, but in fact paid $10,000 to settle the Yasuna portion of the litigation. As

the *Davis* court pointed out, "the [wrongful involvement in litigation] exception was not meant to apply in every case in which one party's wrongdoing causes another to be involved in litigation with a third party. If applied so broadly, the judicial exception would eventually swallow the legislative rule that each party must pay for its own attorney."[7] *Ibid.* (Footnote omitted.)

Similarly, this case does not strictly meet the third requirement, namely, that the litigation be the result of the present defendant's tortious act, since it is not clear that the trial court found the existence of an underlying tort on which recovery would have to be based. We are aware of the court's conclusions that "had the Chatel Firm delivered the goods as promised, . . . certainly the fees involved in the suit against Mrs. Yasuna would not have been incurred by the Biddles in this matter" and that "there is no question in my mind but that [the fees incurred in the Yasuna portion of the suit] clearly should be allowable." Further, the trial judge did find that Chatel had indicated the alley was public, and that it was later made known to the Biddles that the alley belonged to Mrs. Yasuna. However, the trial court went no further; it relied upon what it perceived as the dictates of equity and did not conclude as a matter of law that a tort had been committed. Were this our only concern, in all likelihood we simply would remand the case for a clear determination by the fact-finder on this crucial point.[8]

---

7. Section 1021 of California's Code of Civil Procedure embodies the general American rule.

8. Even with a clear finding of liability based on an underlying tort, we would not be fully persuaded that Chatel's misrepresentations necessitated the litigation with Mrs. Yasuna. It is unclear on the record whether Chatel positively refused to act further to rectify the easement situation or whether its recommendation, through its attorney, that the Biddles retain counsel was for the Biddles' own protection in the event Chatel wound up in court with Mrs. Yasuna. Although arguably spurred on by the Biddles' lawsuit, Chatel did file a motion for summary judgment against Mrs. Yasuna in an attempt to establish a prescriptive easement and Chatel did pay $10,000 to Mrs. Yasuna for a recorded easement on the Biddles' behalf.

Furthermore, it is unclear whether it was really necessary to sue Mrs. Yasuna at all, since the Biddles were never denied physical access to their garage. Thus, absent in this case is "the direct relation of cause and effect between [appellees'] wrong and the resulting litigation." *Bergquist v. Kreidler,* 158 Minn. 127, 132, 196 N.W. 964, 966 (1924). *Cf. Sherrick v. Wyland,* 14 Tex.Civ.App. 299, 37 S.W. 345 (1896) (where a purchase of land was induced by the fraudulent representation that it was free of liens, the buyer could not recover from the seller the amount he paid an attorney to procure a release of a lien on the land where the seller undertook at his own expense to secure the release and action by the buyer's counsel was unnecessary).

■ Of greater legal significance, however, is the Biddles' failure to meet the second prerequisite to recovery on the wrongful involvement in litigation theory. Simply stated, the Biddles did not (and, analytically, could not) establish that their initial dispute was with Mrs. Yasuna and not with Chatel. Rather, the record is clear that the Biddles looked to Chatel—and not to Mrs. Yasuna—from the beginning to resolve the easement problem, and dragged Mrs. Yasuna onto the battleground months after the war had begun. Unfortunately for the Biddles, the fact that this remained a dispute between the Biddles and Chatel, rather than a dispute between the Biddles and Mrs. Yasuna for which Chatel was responsible and into which Chatel was later brought, precludes recovery under the narrow exception to the general rule. *Murphy v. O'Donnell*, D.C.Mun.App., 63 A.2d 340 (1948). While the fact that the Yasuna matter was settled out of court has no bearing on recovery under this theory, *see Brousseau v. Jarrett*, 73 Cal.App.3d 864, 871, 141 Cal.Rptr. 200, 204 (1977), we cannot ignore the salient fact that Chatel financed the settlement, not the Biddles. On these facts, we conclude that the Biddles were not entitled to recovery of legal fees and that the trial court properly entered judgment for Chatel.

*Affirmed.*