**ANSWERING SERVICE, INC., Appellant,**

v.

**Thomas J. EGAN, executor of the estate of Paul J. Rohrich, deceased.**

No. 85–5300.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 7, 1986.

Decided March 14, 1986.

As Amended March 26, 1986.

Kenneth Wells Parkinson, with whom James R. Michal, Washington, D.C., was on brief, for appellant.

William E. Fay, III, New York City, for appellee.

Before WRIGHT, WALD and SILBERMAN, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Answering Service, Inc. appeals the dismissal by the District Court of its tort suit for wrongful involvement in litigation. The District Court held that Answering Service failed to meet the prerequisites for stating a claim for wrongful involvement in litigation and dismissed its suit with prejudice. Because we find that the District Court failed properly to apply District of Columbia law, we now reverse the judgment of the District Court and remand for further consideration of liability issues and, if necessary, of the proper measure of damages.

## I. BACKGROUND

The facts underlying this action were set forth in *Answering Service, Inc. v. Egan*, 728 F.2d 1500 (D.C.Cir.1984), and need only be briefly summarized here. In 1976, William Carmichael, an employee of Answering Service, sued Answering Service and the estate of its deceased former officer and director Paul Rohrich. Carmichael charged Rohrich and Answering Service with fraud, breach of contract, and negligence arising out of a transaction in which Rohrich and another corporate officer purported to issue to Carmichael ten shares of stock in Answering Service as compensation for his services. Carmichael brought suit when he later discovered that these shares were void as an overissue. The jury returned a verdict in favor of Carmichael against Rohrich's estate but absolved Answering Service of liability. On appeal to this court, we affirmed by unpublished memorandum order.

This judgment in favor of Carmichael provides the basis for the present action by Answering Service against Rohrich's estate to recover the attorney's fees and costs expended by Answering Service in defending the "Carmichael litigation." Answering Service grounds its claim on a

District of Columbia common-law cause of action for "wrongful involvement in litigation," which allows recovery of fees and costs incurred in a lawsuit with a third party in certain narrowly defined circumstances. This common-law tort creates a very limited exception to the general rule that attorney's fees and other expenses of litigation are not recoverable as an element of damages. As decisions of the District of Columbia courts have explained:

> Where the plaintiff seeks in a separate action to recover attorney [*sic*] fees incurred by him in earlier litigation with a third person arising out of the tortious act of the defendant, it has been held that if the natural and proximate consequences of the defendant's tortious act were to involve the plaintiff in litigation with a third person, reasonable compensation for attorney's fees incurred by the plaintiff may be recovered as damages against the author of the tortious act.

*Biddle v. Chatel*, 421 A.2d 3, 7 (D.C.1980) (*quoting Brem v. United States Fidelity and Guaranty Company*, 206 A.2d 404, 407 (D.C.1965)) (footnote omitted). Before recovery will be allowed for this tort of wrongful involvement in litigation, three conditions must be satisfied:

> (1) [t]he plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action;
> (2) the litigation ordinarily must have been with a third party and not with the defendant in the present action; and
> (3) the plaintiff must have become involved in such litigation because of some tortious act of the defendant.

*Safeway Stores, Inc. v. Chamberlain Protective Services, Inc.*, 451 A.2d 66, 69 (D.C. 1982) (*quoting Biddle v. Chatel*, 421 A.2d 3, 7 (D.C.1980)).

The District Court in the instant case found that Answering Service failed to satisfy the third condition for wrongful involvement in litigation, *i.e.*, that the corporation became involved in litigation *because of* the tortious conduct of Rohrich. According to the District Court, Answering Service was itself responsible in part for

the Carmichael litigation; consequently, the court refused "to permit a joint tortfeasor, who has avoided liability by presenting a defense for its own benefit, to recover attorney's fees." The District Court appears to have concluded that because Carmichael's complaint included several counts against Answering Service for which there were no corresponding alternative counts against Rohrich, Answering Service must have been defending, at least in large part, its own allegedly tortious conduct. The District Court thus characterized Answering Service as the "principal defendant" in the Carmichael litigation. The court reasoned that since the allegations against Answering Service were "not frivolous," the corporation was not compelled to present a defense *because* of Rohrich. Instead, Answering Service, as the primary defendant in the Carmichael litigation, must have presented a defense "for its own benefit." The District Court thus concluded that despite the jury verdict absolving Answering Service, the corporation was nonetheless a "joint tortfeasor" with Rohrich. As Answering Service was itself responsible in part for the actions giving rise to Carmichael's lawsuit, it could not be deemed to have been wrongfully involved in the litigation because of the conduct of Rohrich.

## II. THE ELEMENTS OF WRONGFUL INVOLVEMENT IN LITIGATION

As we interpret the District Court's opinion, Answering Service's claim for wrongful involvement in litigation was denied because Carmichael's complaint sought recovery from Answering Service on counts for which there were no parallel counts seeking recovery from Rohrich. The District Court is correct that Answering Service cannot recover for wrongful involvement in litigation if it defended itself against any allegations of wrongdoing separate and independent from the conduct of Rohrich. *See Davis v. Air Technical Industries, Inc.*, 22 Cal.3d 1, 148 Cal.Rptr. 419, 421, 582 P.2d 1010 (1978) (cited with approval in *Biddle v. Chatel*, 421 A.2d 3,

8); *cf. Manning v. Loidhamer,* 13 Wash. App. 766, 538 P.2d 136, 140 (1975). The District Court overlooks, however, the theory by which Carmichael sought to hold Answering Service liable under each count in his complaint. In Count I, Carmichael charged that Answering Service, *through its officers,* fraudulently made misrepresentations to Carmichael. Count II charged that Answering Service was liable for the negligence *of its officers* acting within the scope of their duties. In Count III, Carmichael asserted that the corporation *through its officers* orally agreed to pay Carmichael a bonus. Counts IV and V alleged that due to the conduct alleged in Counts I, II and III, Carmichael was entitled to ten shares of stock in Answering Service. Carmichael therefore brought an action in equity to compel Answering Service to transfer to Carmichael stock registered on its books in the name of Rohrich. In each count of Carmichael's complaint, therefore, Answering Service was sued because of the actions of Rohrich.

We conclude that it is not sufficient for the District Court to dismiss Answering Service's suit because the corporation was the "principal defendant" in the Carmichael litigation and should be considered a joint tortfeasor with Rohrich. Whether Answering Service should be considered a joint tortfeasor instead depends on whether Answering Service was independently and actively liable to Carmichael under, for example, a theory of negligent supervision of its officers. Under District of Columbia law, any independent liability of Answering Service for the tortious actions against Carmichael would defeat its claim for wrongful involvement in litigation. *Cf. Safeway*

Stores, Inc. v. Chamberlain Protective Services, Inc., 451 A.2d 66 (D.C.1982) (no recovery for wrongful involvement in litigation suit between two *equally culpable* secondary tortfeasors). District of Columbia law also strongly suggests, moreover, that the jury's determinations on liability made during the earlier litigation brought by a third party will control these issues in a later suit for wrongful involvement in litigation.[1] Since the jury found that Answering Service was not independently liable for Rohrich's actions toward Carmichael and since we have been presented with no other considerations indicating why the jury verdict should not control, Answering Service's suit cannot be dismissed on the ground that Answering Service was a joint tortfeasor.

■ Contrary to the arguments made by Answering Service on appeal, however, the jury's determination on the liability of Answering Service to Carmichael does not control all liability issues in this case. Any conclusive determination of liability on appeal is problematic in view of the fact that the District Court did not conclude as a matter of law that Rohrich committed a tort against Answering Service. *See Biddle v. Chatel,* 421 A.2d 3, 8 (D.C.1980) (remand required where trial court failed to make explicit finding that tort had been committed). The tort of wrongful involvement in litigation carves out a narrow exception to the prevailing principle that attorney's fees are not recoverable as an element of damages. It is quite clear that the tort does not lie simply because a third party sues multiple individuals in tort and one or more of those individuals is found

---

1. The District of Columbia courts have not directly addressed this issue. As a diversity court we are obliged, however, to follow the present trend in District of Columbia law. In *Safeway Stores, Inc. v. Chamberlain Protective Services, Inc.,* 451 A.2d 66 (D.C.1982), the District of Columbia Court of Appeals rejected Safeway's claim for wrongful involvement in litigation because Safeway did not incur attorney's fees in defense of a *prior* action. Safeway had instead cross-claimed against its co-defendant Chamberlain Protective Services in the original tort suit brought by a third party against both Safeway

and Chamberlain Protective Services. The court went on to explain that even if Safeway had waited to bring its wrongful involvement claim until after the underlying litigation with the third party had ended, Safeway would still be precluded from recovery because the jury had found it equally responsible with Chamberlain for the underlying tort under the theory of respondeat superior. The clear import of the decision is that District of Columbia courts will follow the jury's determination on liability issues in a later suit for wrongful involvement in litigation.

not liable by a jury. The defendant in the wrongful involvement suit must, as the very name of the tort suggests, have done something *wrongfully to involve* the plaintiff in the earlier litigation. In other words, the tort of wrongful involvement in litigation is a tort like any other tort—all traditional tort concepts apply. Before damages can be recovered there must be a duty owed by Rohrich to Answering Service whose breach proximately caused Answering Service to become involved in litigation with a third party. The jury verdict in the Carmichael litigation determined only that Rohrich had breached a duty owed to Carmichael, not that Rohrich had necessarily breached an independent duty owed to Answering Service. Before Answering Service can make out a claim for recovery of costs and attorney's fees, Answering Service must trace its injury to a *tort* committed against *it* by Rohrich in his dealings with Carmichael. Whether a tort has been committed is a mixed question of law and fact more appropriate for the District Court in the first instance. *See Biddle v. Chatel*, 421 A.2d at 8. As this unresolved factual question materially affects any eventual determination of liability for wrongful involvement in litigation, we must remand this case to the District Court for a determination of this issue.

### III. THE MEASURE OF ATTORNEY'S FEES

██ If the District Court finds on remand that Answering Service has satisfied all the elements of the tort of wrongful involvement in litigation, the court must then assess the amount of attorney's fees incurred by Answering Service in defending the Carmichael litigation and determine whether those fees were reasonable. The District Court specifically reserved the issue of the reasonableness of the attorney's fees requested by Answering Service and failed to make any factual finding concerning the measure of damages incurred by Answering Service as a result of Rohrich's actions. Answering Service nonetheless argues to this court on appeal that its proffered assessment of damages in the

amount of $117,408.41 cannot be disputed. We find this contention without merit.

At trial on the wrongful involvement action, Answering Service introduced as evidence the billing statements which its law firm, Jackson & Campbell, sent to the corporation during the period of the Carmichael litigation. Answering Service then introduced into evidence cancelled checks showing that the corporation had paid these bills in full. The billing statements sent to Answering Service reflected not only attorney's fees and costs incurred for services rendered to Answering Service in defending the Carmichael litigation but also fees for services performed prior to Carmichael's lawsuit and fees for certain other "extraneous items that found their way into [the] bills, which are unrelated to the Carmichael case." R.E. at 15. These "extraneous items" included the attorney's fees and costs incurred by Jackson & Campbell in representing Richard McNamara and Frances Bowman, the two present officers and stockholders of Answering Service. Although Carmichael never brought suit against either Bowman or McNamara, the two officers intervened as defendants in the Carmichael litigation in order to file a cross-claim for indemnification against Rohrich's estate and to protect their own independent interests as the sole stockholders of Answering Service. The officers also pursued a separate interpleader action in which they were again represented by Jackson & Campbell. Answering Service paid all the fees and costs incurred by its officers in these two actions.

After introducing its billing statements into evidence, Answering Service called its own counsel to the witness stand. Mr. Michal testified in a wholly conclusory fashion that he had examined his law firm's records and calculated the dollar amount of all services included in the bills paid by the corporation that were unrelated to Answering Service's defense in the Carmichael litigation. Mr. Michal explained that he first deducted $3,414.55 from the total bill of $123,047 in order to exclude the attorney's fees and costs incurred by Jackson & Campbell in representing the separate in-

terests of McNamara and Bowman. He then factored out certain "unrelated services and time which are reflected by mistake in our time records, or which got onto the bills sent to Answering Service." R.E. at 48. After deducting this additional amount of $3,000, Mr. Michal opined that the corporation was entitled to $115,597.45 for attorney's fees and $1,815.96 for costs in the Carmichael litigation, resulting in a total claim of $117,408.41 against Rohrich's estate.

Answering Service now argues on appeal that no genuine issue of material fact exists with regard to the *amount* of attorney's fees for which Rohrich's estate should be held liable. We reject this contention as premised on a misreading of the applicable case law. In *Eureka Investment Corporation, N.V. v. Chicago Title Insurance Company*, 743 F.2d 932 (D.C. Cir.1984), this court, sitting in diversity, held that a plaintiff seeking to recover attorney's fees pursuant to an insurance contract provision need not present an *itemized* bill to establish a *prima facie* case concerning the amount of attorney's fees. We explained that under District of Columbia law "submission of a paid bill, supported by testimony of the claimant or claimant's agent that the expense was occasioned by defendant's wrong, is sufficient *prima facie* evidence of the amount of damages." *See* 743 F.2d at 942 (footnote omitted). Answering Service argues that because it submitted evidence of paid bills and because Rohrich's estate offered no evidence to rebut either the amount or the reasonableness of the legal fees claimed, the total amount of the attorney's fees and costs must now be considered undisputed. We find this argument unpersuasive for many reasons. First, Rohrich's estate did attempt to rebut both the amount and reasonableness of Answering Service's claimed fees and costs. Through cross-examination of Mr. Michal, Rohrich's estate sought to cast doubt upon the accuracy of the *ad hoc* method by which Answering Service factored out the unrelated costs from its bills. *See* R.E. at 55. More importantly, Answering Service distorts our hold-

ing in *Eureka*. The evidence which created a *prima facie* case in *Eureka* was far stronger than that presented here. In *Eureka*, the plaintiffs showed that the law firm's billing system assigned a separate accounting number to services performed in connection with the action for which fees were sought. 743 F.2d at 944–45. There was no suggestion that unrelated charges were included in the bill. The sole issue before the court was whether an *itemized bill* was also required to demonstrate that the fees charged were reasonable. Plaintiff's meticulous demonstration in *Eureka* that the paid bills, although not itemized, contained only the appropriate charges for which recovery was sought differs greatly from the presentation in the instant trial in which records were reviewed several years after the fact in order to disentangle miscellaneous charges which had been grouped under one general billing number.

Answering Service's reliance on *Auxier v. Kraisel*, 466 A.2d 416 (D.C.1983), is equally misplaced. *Auxier* held that a paid bill constitutes *prima facie* proof of the reasonableness of attorney's fees for recovery for wrongful involvement in litigation. In *Auxier*, the plaintiff had established a *prima facie* case by introducing evidence of paid bills and the defendant had failed to present any evidence to rebut the presumptive reasonableness of the fees. Consequently, the appellate court ordered the trial court to enter judgment in the amount of the paid bills. Despite the superficial similarity between the present case and *Auxier*, crucial distinctions between the cases make *Auxier* inapplicable. *Auxier* creates no presumption that *all* fees contained in a paid bill have been incurred in pursuing the litigation which forms the basis for a wrongful involvement in litigation suit. Answering Service therefore cannot cite *Auxier* in support of its assertion that all the fees it claims to have incurred in defending the suit brought by Carmichael were in fact so incurred. Although we find this consideration dispositive, we also note that Rohrich's estate may have presented sufficient evidence to

rebut any presumption of the reasonableness of the attorney's fees. At trial, Rohrich's estate showed that Answering Service purports to have expended over $117,000 in defending a suit that resulted in liability of less than $45,000. While this consideration is, of course, not dispositive on the issue of reasonableness, it may be sufficient to put reasonableness in issue. *Cf. Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (reduced fee award is appropriate if the relief is limited in comparison to scope of litigation as a whole).

## IV. CONCLUSION

We conclude that the District Court improperly dismissed the claim of Answering Service for attorney's fees and costs under a tort theory of wrongful involvement in litigation. We therefore reverse and remand to the District Court so that it may further consider issues of liability and, if appropriate, assess the measure of damages.

*So Ordered.*