GRIFFITH CONSUMER COMPANY,
Appellant,

v.

Frank W. SPINKS, II,* Personal Representative of the Estate of Frank W. Spinks, t/a Spinks Company, Appellee.

No. 90–CV–662.

District of Columbia Court of Appeals.

Argued Jan. 15, 1992.
Decided May 12, 1992.

John C. Lynch, Washington, D.C., for appellant.

Donald J. Caulfield, Mount Rainier, Md., for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant Griffith Consumer Company appeals the denial of its motion for attorneys' fees incurred in defense of a suit for damages caused by the negligent removal of an oil boiler by its agent, appellee Spinks Company. Griffith contends that the trial judge erred because Griffith was forced to defend itself solely as a result of Spinks' negligence and because it was wrongfully involved in the litigation. We affirm.

---

* Frank W. Spinks, t/a Spinks Company, was the party of record at the time of oral argument. Frank W. Spinks, II, as personal representative of the estate of Frank W. Spinks, was substituted as the party of record by an order of the court on February 11, 1992.

I

On July 25, 1986, Mr. Parviz Sarem entered into a written contract with appellant Griffith Company for the removal and replacement of an oil boiler in his apartment building at 1701 Kilbourne Place, N.W. Griffith, in turn, entered into an oral contract with appellee Frank W. Spinks, trading as Spinks Company, to perform the work on Mr. Sarem's premises. Thereafter Spinks removed the old oil boiler and installed its replacement. While removing the old boiler, however, Mr. Spinks and two other employees of Spinks chipped one of the steps leading to the basement in which the boiler had been housed. Mr. Spinks told Mr. Sarem, who was watching the removal of the old boiler, that he would repair the step. Mr. Spinks also notified Griffith about the damage to the step.

On January 15, 1987, Mr. Sarem filed a *pro se* complaint against Griffith for negligence, alleging that the two men removing the boiler had "dropped it on each step as they came up from the basement and again as they went down the front steps to the street[,] cracking all the concrete steps to th[e] apartment building." Mr. Sarem also alleged that the installers had "completely destroyed" a "brick column at the top of the steps." He asked for $50,000 in damages and legal costs. No express allegation was made regarding Griffith's actions or inactions. Griffith answered on February 17, 1987, admitting the existence of the July 25th contract but denying all allegations and raising various defenses, including that the claim was barred by the provisions of the contract.[1]

The following day, February 18, 1987, Griffith filed a third-party complaint against Spinks, claiming on the basis of the subcontract that if there was any damage caused by Spinks, Griffith would be entitled the the full amount of whatever judgment was awarded to Mr. Sarem, plus costs, interest and attorneys' fees. Griffith also made formal, written requests, beginning in June 1987, that Spinks assume, through its insurer, Griffith's representation in the lawsuit, stating that "all of the plaintiff's allegations of negligence center on the activities of [Spinks'] employees," and advising further that Griffith would look to Spinks for recovery of all costs associated with defense of the case. Spinks refused to assume the defense.[2]

After a bench trial on March 19, 1990, the judge found that Mr. Sarem had failed to prove his claims that extensive damage to the steps and the brick column "was caused by the actions of Griffith Consumers or the independent contractor, Mr. Spinks and his son." However, the judge noted that there was "one exception to that finding," based on Spinks' testimony that there was damage to the lower step caused when Mr. Spinks and his son brought the old boiler out, and therefore, the judge found that the defendant [was] liable and entered a judgment against Griffith for $650 in damages, which represented the trial judge's estimate of the reasonable value of the damage admittedly caused by Spinks to one of the steps.[3]

Thereafter, Griffith filed a motion to make additional findings and to amend the judgment, seeking entry of judgment against Spinks on the third-party com-

1. The "home improvement/retail installment contract," dated January 28, 1981, provided that "Seller hereby agrees to sell, install and place in operating condition on the Premises of the Buyer.... (1) new-Weil-McLain CCM–6 Gas Boiler and connect to existing supply and return lines." The contract included a disclaimer of liability for "incidental or consequential damages" including damage to real property in the event of breach of the contract.

2. In addition, on April 5, 1989, Griffith filed a motion for summary judgment on the ground that "there are no genuine issues of material fact as to the liability of the third-party defendant for indemnity, including any sums owed to

the plaintiff by the defendant, third-party plaintiff, plus costs and attorneys' fees incurred by Griffith Consumer with respect to this matter." Spinks opposed the motion on the ground that it was premature because liability as between the plaintiff and Griffith had not been established. The judge denied the motion for summary judgment without prejudice.

3. Before announcing his decision on the amount of the damages, the judge asked the parties to step outside to see if they could resolve the issues of damages. This proved fruitless.

plaint. Spinks, in response, suggested that the findings of fact should show, as Mr. Spinks had testified, that Griffith, which inspected Mr. Sarem's premises and drew up the contract, should have notified Mr. Spinks of the condition of the property because, had he known, he would not have entered the property without advising Mr. Sarem of the possibility of slight damage in removing the boiler from the basement. Spinks further noted that it had paid the $650 damages plus costs, that there was no written contract of indemnification between it and Griffith, and that had Griffith wished to enter into such an indemnification contract it would have done so. Griffith responded that it was undisputed that it had requested Spinks to defend the case and to indemnify Griffith for its costs related to the defense because Spinks was functioning as an independent contractor under an oral agreement, and further, that Spinks' refusal to defend was evidence of bad faith because Spinks provided all of the work, labor and materials for removal and installation of the gas boiler. The trial judge denied Griffith's motion to amend the judgment as moot since the judgment had been paid, and also denied Griffith's motion for attorneys' fees and costs.

## II

On appeal, Griffith makes no claim that the trial judge erred by granting judgment in favor of Mr. Sarem against Griffith and not against Spinks, nor by denying Griffith's motion for findings on the third-party complaint. Instead, Griffith contends that the trial judge erred by denying its motion for attorneys' fees because Griffith was forced to defend itself solely because of the negligence of Spinks.[4] Griffith argues that it was not found to be a joint tortfeasor, that Spinks' employees were the only persons whose activity on

Mr. Sarem's premises caused the damage complained of by Mr. Sarem, and that the amount of monetary damages was based solely on the admissions by Spinks of its negligence. Further, Griffith argues that "[a]lthough vague allegations of Griffith's lack of notification to Spinks regarding the existing conditions of the plaintiff's property have been suggested as negligence, there was no 'charge' of negligence against [Griffith] upon which it was forced to defend itself."

In general, a "plaintiff litigating a civil action must bear his [or her] own attorney's fees and expenses absent a contractual or statutory basis for liability." *Safeway Stores, supra* note 4, 451 A.2d at 68 (D.C.1982); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 246–55, 95 S.Ct. 1612, 1616–21, 44 L.Ed.2d 141 (1975); *Cahn v. Antioch University,* 482 A.2d 120 (D.C.1984); *AFSCME v. Ball,* 439 A.2d 514 (D.C.1981). However, it is within the trial court's discretion to award attorneys' fees in an equitable action for indemnity. *Safeway Stores, supra* note 4, 451 A.2d at 70; *see* 42 C.J.S. *Indemnity* § 20 (1991). Indemnity has been relied on in such actions as a common law remedy that arises from an express or implied contract "which shifts a monetary loss from one compelled to pay it to another whom equity dictates should bear it instead." *Myco, Inc. v. Super Concrete Co., Inc.,* 565 A.2d 293, 297 (D.C.1989) citing WILLIAM PROSSER, THE LAW OF TORTS, § 51 (4th Ed.1971).

There is no requirement that indemnity be by express agreement; instead, it may be implied as "essentially an equitable remedy that 'arise[s] without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.' " *Id.* at 297 (quoting W. PAGE KEE-

---

4. Griffith's second contention, that it was entitled to attorneys' fees because it was "wrongfully involved in litigation," *see Safeway Stores v. Chamberlain Protective Services, Inc.,* 451 A.2d 66, 68 (D.C.1982); *Biddle v. Chatel,* 421 A.2d 3, 7 (D.C.1980); *Brem v. United States Fidelity & Guaranty Co.,* 206 A.2d 404, 407 (D.C.1965), is raised for the first time on appeal. This court will consider an issue not raised in the trial

court where "necessary to prevent a miscarriage of justice." *W. W. Chambers, Inc. v. Audette,* 385 A.2d 10, 15 (D.C.1978); *see also Chase v. Gilbert,* 499 A.2d 1203, 1209 (D.C.1985). Griffith has made no showing of "prejudice affecting substantial rights," *Woodard v. City Stores Co.,* 334 A.2d 189 (D.C.1975), and we find none, and therefore, we do not address this second contention.

TON, ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 51, at 341 (5th ed. 1984)). Thus, an obligation to indemnify arises "where the equities of the case and the relationship of the parties support shifting responsibility from one party to another." *Howard University v. Good Food Services*, 608 A.2d 116, 122 (D.C.1992) (citing *Nat'l Health Labs. v. Ahmadi*, 596 A.2d 555 (D.C.1991)).

Entitlement to attorneys' fees as indemnity, however, has long been held to depend on whether a defendant defended against charges of his or her own negligence. *See Westfield v. Mayo*, 122 Mass. 100 (1877). In *Safeway Stores, supra* note 4, the court stated:

> If a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party, and is compelled to defend no misfeasance of his own, he may notify such a party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, if liable over, he is liable not only for the amount of damages recovered but for all reasonable and necessary expenses incurred in such defense.

451 A.2d at 70 (citing *Westfield, supra*, 122 Mass. at 109).

Relying on *Safeway Stores*, Spinks maintains that Mr. Sarem's real motive in suing for "damage to the entire stair system and columns [and] not the single damaged step" was to enrich himself at Griffith's expense, and that "[i]n the present case there was a finding that there was no liability of either Griffith or Spinks on the claim of extensive damage." Thus, Spinks contends that the litigation was not solely the result of its actions, that both "Griffith and Spinks were separately charged with inflated claims," and that, therefore, "Griffith had a separate duty to defend itself." Further, Spinks maintains that under its

oral contract with Griffith it did not assume the obligation to defend Griffith against claims that had no basis in fact and were not attributable to Spinks.

Griffith, on the other hand, argues that all allegations of negligence were based upon the activities of Spinks' employees because the complaint filed by Mr. Sarem stated only that Mr. Sarem had "signed a contract with [Griffith] to change the heat system from oil to gas," and described the damage which was allegedly caused during the installation of the boiler. Because the complaint alleged no negligence by Griffith, Griffith maintains that there was nothing for it to defend. Griffith argues, moreover, that Mr. Sarem's motive for filing his complaint was never claimed to include personal enrichment at Griffith's expense, and that no act or failure to act by Griffith was found by the trial judge to be a proximate cause of the plaintiff's damage. Therefore, Griffith maintains that it defended solely and exclusively the acts of Spinks and no misfeasance of its own.

We agree that the occasion for the lawsuit was the damage allegedly caused to the plaintiff's property during the removal and installation of a gas boiler by Spinks. Further, the trial judge's finding of no joint tortfeasor status for Griffith might provide a basis for concluding that it was entitled to full indemnity by Spinks for the defense of the lawsuit. There is, however, a further difficulty that causes us to reject Griffith's argument on the facts of this case.

The *pro se* complaint, reasonably read, can be viewed as encompassing a claim of vicarious liability against Griffith for the conduct of its agent because it is clear that Mr. Sarem was looking to Griffith as the contracting party which had undertaken to install a new boiler and hired the employees who damaged the plaintiff's property.[5] *See, e.g., Safeway Stores, supra* note 4, 451 A.2d at 68 (complaint alleged negligent hiring, supervision and training of security

---

**5.** Although the trial judge found that Spinks was acting as an independent contractor, nothing in the record before us suggests that this relationship was, or should have been, apparent to Mr. Sarem at the time he filed his complaint. Con-

sequently, a complaint drafted by an attorney also would likely have included a charge that Griffith was vicariously liable for the damage caused by Spinks.

guard as well as a claim of vicarious liability for the tortious conduct of the guard); *Addy v. Bolton*, 257 S.C. 28, 183 S.E.2d 708, 709 (1971) (tenants in building damaged by fire sued landlords as well as contractor who actually started fire alleging that fire was due to their joint and concurrent negligent, careless and reckless acts); *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (*pro se* complaint, "however inartfully pleaded," held to "less stringent standards than formal pleadings drafted by lawyers"); *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Smith–Bey v. Cripe*, 271 U.S.App.D.C. 294, 296, 852 F.2d 592, 594 (1988). Alternatively, had Mr. Sarem had the assistance of counsel in preparing the complaint against Griffith, the complaint most likely would have included a specific contract claim against Griffith. *See, e.g. McDonough Construction Co. v. H.B. Fowler & Co.*, 281 F.Supp. 90, 92 (E.D.La.1968) (buyer of steel piles sued seller under contract for damage incurred in improper loading of piles onto barge by seller's subcontractor). Indeed, the joint pre-trial statement filed by all three of the parties stated that there was no dispute that Mr. Sarem and Griffith entered into a "written home improvement/retail installment contract," thereby suggesting that the contract itself provided the legal basis for Mr. Sarem's lawsuit.

Thus, viewing Mr. Sarem's complaint as encompassing an allegation of vicarious liability for Spinks' alleged negligence in installing the boiler and liability arising from the contractual relationship, such as negligent hiring or supervision, *see* PROSSER & KEETON ON THE LAW OF TORTS, *supra* §§ 70, 71, Griffith was compelled to defend against claims directed at it. The trial judge found that neither Griffith nor Spinks caused the extensive damage complained of by Mr. Sarem.[6] Adopting Grif-

fith's position—that because the trial judge found that Griffith was not a tortfeasor, and because Mr. Sarem's *pro se* complaint made no explicit contract claims against Griffith, Spinks must bear the costs of Griffith's defense and pay its attorney's fees—means that Spinks liability for attorneys' fees would depend upon the fortuity that Mr. Sarem's complaint was filed *pro se* and thus failed to specify the exact nature of Griffith's alleged breaches of contract. It has long been clear that a party is entitled to recover attorneys' fees from a co-defendant "only when he defends *solely* and *exclusively* the act of the other party and is compelled to defend no misfeasance of his own." *Westfield, supra,* 122 Mass. at 109 (emphasis added). Because Griffith was defending against implied charges, however unfounded, of its own negligence in hiring or supervising Spinks, Griffith is not entitled to indemnification of its attorneys' fees.

■ On the other hand, the *pro se* complaint, even if reasonably read to include a breach of contract claim, would not necessarily mean that Griffith would be responsible for its own attorneys' fees. This is because, notwithstanding the breach of contract claim that Griffith had to defend, its attorneys' fees might be viewed as the foreseeable consequences of Spinks' breach of its implied contractual obligation to perform non-negligently, at least to the extent that those fees were incurred in defending against breaches proven in the litigation. *See McDonough Construction Co. v. H.B. Fowler & Co.*, 281 F.Supp. 90 (E.D.La.1968) (" '[r]easonable attorneys' fees incurred by [the seller] in defending the action brought by the [plaintiff] are foreseeable consequences of [the subcontractor's] breach of its implied contractual obligation [and] [s]uch foreseeable consequential expenses are properly awarded when an indemnity

---

6. To this extent, cases such as *Pullman Standard v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn.1985), are distinguishable since Spinks was not found liable for the excessive damages claimed by Mr. Sarem. On the other hand, there is a difference in point of view among the states, *see id.* at 339 (and cases cited), some allowing recovery of attorneys' fees by the indemnitee where its involvement in litigation is based on a charge of constructive liability for wrongdoing of the indemnitor; Tennessee, by contrast, adopts the view that it is the indemnitee's actual wrongdoing rather than allegations of wrongdoing that determine the indemnitee's rights as a result of the relationship of the parties.

obligation exists"). *See also Addy v. Bolton, supra,* 183 S.E.2d at 709 (landlords without fault entitled to recover costs and attorneys fees incurred in their successful defense of action brought by tenants for fire caused by negligence of general contractor hired by landlords); *Cormier v. Rowan Drilling Co.,* 549 F.2d 963, 971 (5th Cir.1977) (in action for indemnity between two tortfeasors, party actively negligent should bear consequences of its wrong and is responsible for damages incurred by party vicariously or secondarily wrong).

However, based on the pleadings before the trial judge on the motion for findings on the third-party complaint and to amend the judgment, and the trial judge's rulings after the trial, we find no abuse of discretion by the trial judge in denying Griffith's motion for attorneys' fees and costs. *See Marlowe v. Marlowe, supra,* 310 A.2d 59, 61 (D.C.1973) (award within discretion of trial judge); *see generally Johnson v. United States,* 398 A.2d 354 (D.C.1979) (trial court discretion). The trial judge, after finding for the plaintiff in the amount of $650.00, inquired of counsel for Griffith and Spinks "where does that leave things between the two of you." Counsel for Spinks replied, "[w]e'll work it out," while counsel for Griffith remained silent. The judge told them to get back to him if they had any problems, and then stated, "[a]ll right, that will be the judgment of the Court." Thus, a judgment was entered against Griffith and thereafter paid by Spinks. However, when counsel for Griffith filed a motion for findings on the third-party complaint and to amend the judgment, the judge denied the motion as moot, noting that the judgment had been paid.

Although the judge did not make any findings in denying Griffith's motion for attorneys fees and costs, there was evidence, through Mr. Spinks' testimony, that the cause of the damage actually incurred was not solely Spinks' negligence. Spinks testified that Griffith's representative should have alerted Spinks to the difficulty of performing the job. Further, in response to a question about whether it was his usual practice to notify the principal company or the property owner that there are conditions that might cause problems, Spinks responded that "[t]his is the first case that's ever come up like that. Nine times out of ten the owner already knows he's got inferior steps." The trial judge credited Mr. Spinks' testimony regarding the damage to the single step, and the record does not indicate that Griffith disputed the existence of the conditions that Spinks claimed made the job difficult to perform. Under these circumstances, the judge could reasonably conclude that since Spinks had paid the judgment and court costs, the equities were properly balanced. Spinks had argued that had "a large company" like Griffith wanted to be assured of indemnity for any and all damages, it would have entered into a written contract with Spinks, which was a partnership consisting only of Mr. Spinks and his son. In the absence of a written indemnity provision whereby Spinks had agreed to indemnify Griffith for any and all damages and costs arising out of the replacement of Mr. Sarem's boiler, the judge could reasonably conclude that there was no basis on which to find that the terms of an implied indemnity between Griffith and Spinks would extend beyond indemnity for the damages actually done by Spinks. Spinks, like Griffith, was a totally innocent party as to the excessive damages claimed by Mr. Sarem. There would be no reason in equity to require an innocent party to indemnify the party named as the defendant in an unfounded lawsuit. *Cf. McKinnon & Mooney v. Firemen's Fund Indemnity Co.,* 288 F.2d 189, 190 (6th Cir.1961) (agent compelled to defend baseless suit arising from acts performed in principal's business may recover reasonable and necessary expenses incurred in its defense).

Accordingly, we affirm the order denying the motion for judgment for attorneys fees and costs.