NEPERA CHEMICAL, INC., Appellant

v.

SEA–LAND SERVICE, INC., et al.

No. 81–2388.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 14, 1982.

Decided June 17, 1986.

Martin Sterenbuch, with whom Hugh H. Lewis, Washington, D.C., was on brief, for appellant.

Edward M. Shea, with whom Francis W. Fraser, Washington, D.C., was on brief, for appellee Sea-Land Service, Inc.

C. Jonathan Benner, General Counsel, Federal Maritime Com'n, Clare R. Donelan, Atty., Federal Maritime Com'n, Stanley S. Harris, U.S. Atty. at the time the brief was filed, Lawrence Ledebur, Atty., Dept. of Justice, and John Oliver Birch, Asst. U.S. Atty., Washington, D.C., were on the brief for appellees Federal Maritime Com'n, et al. Gordon M. Shaw, Atty., Federal Maritime Com'n, Kenneth M. Raisler, Asst. U.S. Atty. at the time the brief was filed, Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellees Federal Maritime Com'n, et al.

Before ROBINSON, Chief Judge, WALD, Circuit Judge, and LUMBARD,* Senior Circuit Judge.

Opinion of the Court filed by Chief Judge ROBINSON.

* Of the United States Court of Appeals for the Second Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

This appeal challenges a summary judgment dismissing an action by Nepera Chemical, Inc., which asserts negligence on the part of Sea-Land Service, Inc. Nepera urges reversal on several grounds, some of which we deem meritorious. So, while we affirm in part, we also reverse in part and remand for further proceedings.

## I. BACKGROUND

The controversy had its inception in an agreement of sorts between Nepera, a manufacturer and distributor of chemicals, and Sea-Land, an ocean-going common carrier operating in foreign commerce, and as such subject to the Shipping Act of 1916.[1] Prior to 1978, Sea-Land's published tariff specified a rate of $6.85 per hundredweight for overseas transportation of picolines, a liquid chemical manufactured by Nepera and used in the production of nicotinic acid.[2] In anticipation of a new tariff soon to be become effective,[3] Sea-Land informed Nepera that it would maintain in that tariff a rate equivalent to $6.85 per hundredweight for carriage of picolines.[4] Despite this affirmative assurance, however, Sea-Land's new tariff, when later published, did not include any reference to that chemical.[5] As a result, when, in 1978, Nepera shipped three containers of picolines from the United States to Spain, Sea-Land was legally required to calculate its freight charges on the tariff rate reserved for liquid commodities "not otherwise specified."[6] That rate was $631.25 per weight-ton—more than four times the old rate for picolines.[7]

Sea-Land subsequently informed Nepera, however, that it would correct the overcharge[8] by resorting to Section 18(b)(3) of the Act.[9] That section allows a carrier to apply to the Federal Maritime Commission for approval of a refund to a shipper of a portion of charges collected, or a waiver of collection of charges billed, "where it appears that there is an error in a tariff of a clerical or administrative nature" and certain other statutory conditions are met, including the filing of the application for refund or waiver within 180 days from the date of shipment.[10] Sea-Land promptly published a new tariff item designating a weight-ton rate for picolines which approximated, but was not identical to, the earlier $6.85 per-hundredweight rate.[11] Later, exactly 180 days after Nepera's shipment,

1. Act of Sept. 7, 1916, ch. 451, 39 Stat. 728 (1916) (codified as amended at 46 U.S.C. §§ 801 *et seq.* (1982)) [hereinafter cited as codified].

2. *Nepera Chem., Inc. v. Sea-Land Serv., Inc.,* 527 F.Supp. 136, 138 (D.D.C.1981). These rates were published as Sea-Land Freight Tariff 166, FMC–43. *Id.*

3. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 138. On December 31, 1977, Sea-Land was to join in United States North Atlantic/Spanish Freight Agreement 10117, which would require Sea-Land to file a new tariff—Tariff 232—converting its rates to a "weight-ton" basis. *Id.*

4. *Id.*

5. *Id.*

6. *Id.* at 138–139. The Shipping Act provides that "[n]o common carrier by water in foreign commerce ... shall charge or demand or collect or receive a greater or less or different compensation for the transportation of property or for any service in connection therewith than the

rates and charges which are specified in its tariffs on file with the [Federal Maritime] Commission and duly published and in effect at the time...." 46 U.S.C. § 817(b)(3) (1982). Sea-Land also charged Nepera at the "not otherwise specified" rate for a shipment of two containers of picolines from the United States to The Netherlands. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 139 n. 1. This shipment was not governed by Sea-Land Freight Tariff 232, but instead by a separate tariff which included a specific rate of $155.00 per weight-ton for picolines. *Id.*

7. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 139.

8. *Id.*

9. 46 U.S.C. § 817(b)(3) (1982), quoted in full *infra* note 23.

10. *Id.*

11. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 139.

Sea-Land applied to the Commission under Section 18(b)(3) for permission to refund and waive the amount by which Sea-Land's actual freight bills exceeded charges based on the corrected tariff rate for picolines.[12]

The Commission denied Sea-Land's application simply because the corrected rate for picolines was not the perfect counterpart of the old $6.85 per-hundredweight rate.[13] In accordance with an established agency policy requiring absolute equivalence of the two figures, the Commission ordered Sea-Land to recoup from Nepera the full amount of freight charges computed at the unspecified-liquids rate, a total of $25,596.51 over the picolines rate in the pre-1978 tariff;[14] and, since none of the statutory 180-day filing period remained, the Commission's disposition became administratively final. Thereafter, Sea-Land refused to request review of the Commission's decision by this court, thus prompting Nepera to do so.[15] We reversed the Commission's denial of Sea-Land's application, holding that relief under Section 18(b)(3) was appropriate despite the minor rate variation attributable to the methodology of conversion.[16]

In the meantime, Nepera had instituted the present litigation in the District Court. Charging negligence by Sea-Land, Nepera sought compensatory damages, measured by the amount of freight overcharges and the expenses incurred in prosecuting the proceeding in which the Commission's adverse decision was overturned, and punitive damages as well.[17] The District Court granted summary judgment to Sea-Land, noting that Nepera had prevailed in this court and thereby had established Sea-Land's duty and authority to cancel the overcharges, and on that basis it dismissed Nepera's claim to relief therefrom as moot.[18] Holding further that Nepera's sole remedy lay in the proceeding authorized by Section 18(b)(3),[19] the court rejected Nepera's demands for punitive damages,[20] for attorneys' fees and other expenses it incurred in the forerunning litigation,[21] and for attorneys' fees in the case at bar.[22] We turn now to consider Nepera's contentions that the last four rulings were in error.

12. *Id.* Nepera had paid Sea-Land at the old $6.85 rate for shipment of the three containers to Spain. What the application thus sought was essentially a waiver of additional charges on that shipment. Nepera had paid at the unspecified-liquids rate for shipment of the two containers to The Netherlands. See note 6 *supra.* For that, the application was for a refund of the excess.

13. *Id.* In converting the $6.85 per-hundredweight figure to a weight-ton rate, some "rounding off" was necessary. See *Nepera Chem., Inc. v. FMC,* 213 U.S.App.D.C. 173, 175 & n. 7, 662 F.2d 18, 20 & n. 7 (1981). Sea-Land arrived at $162.25 per weight-ton, but the administrative law judge who initially reviewed Sea-Land's application concluded that the correct figure was $153.44 per weight-ton and that this difference was a "fatal" defect. *Sea-Land Serv., Inc.,* F.M.C. Special Docket No. 606 (Apr. 23, 1979) (initial decision) at 9–10 [hereinafter cited as *ALJ Decision* ], Joint Appendix (J.App.) 44–45. On Nepera's administrative appeal urging that the deviation was solely the consequence of rounding off in the conversion process, the Commission merely adopted the judge's decision. *Sea-Land Serv., Inc.,* F.M.C. Special Docket No. 606 (Aug. 8, 1979) (report and order), J.App. 55.

14. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 139.

15. See *id.*

16. *Nepera Chem., Inc. v. FMC, supra* note 13, 213 U.S.App.D.C. at 177, 662 F.2d at 22.

17. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 136. The Commission and the United States were granted leave to intervene and join in Sea-Land's motion for summary judgment. *Id.* at 137.

18. *Id.* at 137. Nepera disavows any intention of appealing that determination. Brief for Appellant at 5; Reply Brief for Appellant at 1.

19. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 137. On appeal, the Commission and the United States have concentrated their arguments primarily on the issue of the exclusivity of § 18(b)(3).

20. *Id.*

21. *Id.* at 138–139.

22. *Id.*

## II. EXCLUSIVITY OF SECTION 18(b)(3)

▪ The initial question presented by this appeal is whether the rate-correction procedure furnished by Section 18(b)(3) of the Shipping Act [23] is exclusive, and thus forbids a common-law action against a carrier for negligence in applying for leave to refund and waive shipping charges, where the carrier voluntarily represented that it would seek a specified rate correction. Persuasive authority leads us to conclude that it is not.

The Supreme Court has on two occasions been confronted by strikingly similar issues of exclusivity of federal statutory provisions. In *Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc.*,[24] a shipper challenged a motor carrier's practice of directing intrastate shipments over interstate routes in an effort to obtain the higher interstate rate, and sought to recover the resulting difference in the carrier's charges. In holding that the common-law action for refund of freight overcharges had survived passage of the Motor Carrier Act,[25] the Court discussed five considerations significant to the case at bar. First, the shipper did not question the reasonableness of the tariff rates, but rather the carrier's response to its common-law duty to transport over the least expensive available route.[26] Second, the Motor Carrier Act provided no procedure by which routing practices, as opposed to rates, could be contested prior to shipment.[27] Third, allowance of an action for damages suffered as a consequence of misrouting would not jeopardize the stability of either tariffs or routes, and thus would not hamper the efficient administration of the Act.[28] Fourth, continued recognition of such an action would have a "healthy deterrent effect" upon motor

---

23. Section 18(b)(3) provides in its entirety:

No common carrier by water in foreign commerce or conference of such carriers shall charge or demand or collect or receive a greater or less or different compensation for the transportation of property or for any service in connection therewith than the rates and charges which are specified in its tariffs on file with the Commission and duly published and in effect at the time; nor shall any such carrier rebate, refund, or remit in any manner or by any device any portion of the rates or charges so specified, nor extend or deny to any person any privilege or facility, except in accordance with such tariffs: *Provided, however,* That the Federal Maritime Commission may in its discretion and for good cause shown permit a common carrier by water in foreign commerce or conference of such carriers to refund a portion of freight charges collected from a shipper or waive the collection of a portion of the charges from a shipper where it appears that there is an error in a tariff of a clerical or administrative nature or an error due to inadvertence in failing to file a new tariff and that such refund or waiver will not result in discrimination among shippers: *Provided further,* That the common carrier by water in foreign commerce or conference of such carriers has, prior to applying for authority to make refund, filed a new tariff with the Federal Maritime Commission which sets forth the rate on which such refund or waiver would be based: *Provided further,* That the carrier or conference agrees that if permission is granted by the Federal Maritime Commission, an appropriate notice will be published in the tariff, or such other steps taken as the Federal Maritime Commission may require, which give notice of the rate on which such refund or waiver would be based, and additional refunds or waivers as appropriate shall be made with respect to other shipments in the manner prescribed by the Commission in its order approving the application: *And provided further,* That application for refund or waiver must be filed with the Commission within one-hundred and eighty days from the date of shipment.

46 U.S.C. § 817(b)(3) (1982).

24. 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962).

25. 49 U.S.C.A. §§ 301–327 (1963 & 1985 supp.) (repealed).

26. *Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., supra* note 24, 371 U.S. at 86, 83 S.Ct. at 159, 9 L.Ed.2d at 145.

27. *Id.* at 87, 83 S.Ct. at 159, 9 L.Ed.2d at 145.

28. *Id.* at 88, 83 S.Ct. at 159, 9 L.Ed.2d at 146. The Court distinguished *T.I.M.E., Inc. v. United States,* 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), where an assault upon the reasonableness of carrier charges was held to be foreclosed as inconsistent with the statutory scheme of regulation because the Motor Carrier Act was replete with built-in protections for that very grievance. *Id.* at 479, 79 S.Ct. at 913, 3 L.Ed.2d at 962. The *Hewitt-Robins* claim of misrouting, in contrast, did not suffer from that infirmity. 371 U.S. at 87, 83 S.Ct. at 159, 9 L.Ed.2d at 146.

carriers.[29] And "[f]inally, and not to be overlooked," said the Court, "the absence of any judicial remedy places the shipper entirely at the mercy of the carrier, contrary to the overriding purpose of the Act. The allowance of such actions would, on the contrary, give neither an unfair advantage."[30]

The factors that led the Court to sustain the common-law action in *Hewitt-Robins* are equally apposite and decisive here. Nepera directs its attack, not at the reasonableness of any rate, but at Sea-Land's alleged subpar performance of its assumed duty to apply for a correction utilizing a rate equivalent to the $6.85 per hundredweight rate that Sea-Land had previously represented it would maintain.[31] The Shipping Act supplies no procedure by which a shipper can challenge a carrier's activities in this connection prior to shipment. Nepera's negligence action poses no threat to the sanctity of tariffs or the efficient administration of the Shipping Act; on the contrary, by deterring carriers from carelessness in discharging voluntarily assumed duties,[32] lawsuits of that nature would assist in achieving important pur-

poses of Section 18(b)(3)—"prevent[ion of] injustice in situations where it would be inequitable to charge the filed rate," [33] and avoidance of discriminatory treatment of shippers.[34] Lastly, "and not to be overlooked," [35] Section 18(b)(3) authorizes the carrier alone to apply to the Commission for authority to refund or waive transportation charges,[36] and thus places the shipper "entirely at the mercy of the carrier." [37] We believe the overall remedial objectives of the Shipping Act easily tolerate recognition of common-law tort liability for a carrier's negligent acts or omissions in filing a Section 18(b)(3) application where the carrier has taken on responsibility for seeking a refund or waiver based on a specified rate.

Moreover, in *Nader v. Allegheny Airlines, Inc.*,[38] the Supreme Court again found nonexclusivity when it held that the Federal Aviation Act, despite its addressal of "deceptive practices," did not foreclose common-law fraudulent-misrepresentation actions against carriers subject to its provisions.[39] The Court declared that, as a general rule, "a common-law right, even ab-

29. *Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., supra* note 24, 371 U.S. at 88, 83 S.Ct. at 159, 9 L.Ed.2d at 146.

30. *Id.*

31. See Brief for Appellant at 12, 18.

32. See *Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., supra* note 24, 371 U.S. at 88, 83 S.Ct. at 159, 9 L.Ed.2d at 146.

33. S.Rep. No. 1078, 90th Cong., 1st Sess. 5, *reprinted in* [1968] U.S.Code Cong. & Ad.News 1911, 1914 (report of James L. Parris, General Counsel, Department of Commerce); see also *Federal Maritime Commission, Legislation and Activities Report: Hearings Before the Subcomm. on Merchant Marine of the House Comm. on Merchant Marine and Fisheries*, 90th Cong., 1st Sess. 87 (1967) [hereinafter cited as House Hearings] (statement of Rear Admiral John Harllee, Chairman, Federal Maritime Commission) (shippers who rely on carriers' statements should not suffer for carriers' neglect).

34. House Comm. on Merchant Marine and Fisheries, Report on Steamship Agreements and Affiliations in American Foreign and Domestic Trade, H.R. Doc. No. 805, 63d Cong., 2d Sess.

417–418 (1914); House Hearings, *supra* note 33, at 11 (statement of Rear Admiral John Harllee, Chairman, Federal Maritime Commission) ("our job is to prevent unfairness and unjust discrimination"); see also *Consolo v. FMC*, 383 U.S. 607, 623, 86 S.Ct. 1018, 1028, 16 L.Ed.2d 131, 142 (1966) (finding of discrimination central to holding of violation of Shipping Act); 46 U.S.C. §§ 812, 815, 816 (1982) (prohibiting discriminatory rebates, acts and rates).

35. *Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., supra* note 24, 371 U.S. at 88, 83 S.Ct. at 159, 9 L.Ed.2d at 146, quoted in text *supra* at note 30.

36. See 46 U.S.C. § 817(b)(3) (1982), quoted *supra* note 23 (carrier may apply for authority to make refund).

37. *Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., supra* note 24, 371 U.S. at 88, 83 S.Ct. at 159, 9 L.Ed.2d at 146, quoted in text *supra* at note 30.

38. 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).

39. *Id.* at 292, 96 S.Ct. at 1981, 48 L.Ed.2d at 648.

sent a saving clause,[40] is not to be abrogated 'unless it be found that the preexisting right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory.' "[41] We are satisfied that the rate and antidiscrimination policies of the Shipping Act would in no way be impaired by allowance of a common-law negligence action under the circumstances presented in this case.

Important to our holding today is an accurate understanding of what Nepera assails in this case. The District Court apparently believed that Nepera's target was the higher tariff rate for its shipments of picolines.[42] As we read the record, however, Nepera's aim is wholly different. Nowhere does Nepera assert that either the rate Sea-Land assured or the rate it charged is unreasonable—a grievance that could be remedied only under the terms of the Shipping Act. Nepera's sole claim is that Sea-Land's negligence in handling the application for refund and waiver led to automatic statutory imposition of a rate that was much higher than it should have been. That contention calls into question the course of conduct by which the higher rate became binding, not the validity of any rate designated for any commodity. No injury suffered as a result of the negligence averred can be redressed by resort to the statutory procedure for protesting

rates as unjust now that the time limit for filing such a protest has expired.[43] We hold that Section 18(b)(3) does not bar Nepera's negligence suit.

III. PRIOR–LITIGATION EXPENSES

The District Court held that Nepera could not recover excessive overcharges in its lawsuit against Sea-Land because the latter was required to correct them in a Section 18(b)(3) proceeding.[44] Since Nepera does not seek review of that ruling,[45] we need not consider whether the Shipping Act precludes relief of that sort in a common-law action. Nepera continues, however, to press the remainder of its demand for compensatory damages—for attorneys' fees and other expenses incurred in obtaining reversal of the Commission's order denying the application for refund and waiver.[46] The District Court treated this effort as a run-of-the-mill request for reimbursement of those items and deemed them nonrecoverable as a matter of law.[47] We conclude that the court erred in doing so.

▮ Consideration of Nepera's damages claim requires initially an identification of the body of law controlling. Although the parties have argued the issue pro and con as one of general federal law,[48] that treatment is the product of faulty analysis. Nepera invoked the jurisdiction of the District Court solely on the ground of diverse citizenship,[49] and no other basis

---

40. Unlike the Federal Aviation Act, the Shipping Act contains no saving clause. Compare 49 U.S.C. § 1506 (1982) with 46 U.S.C. §§ 801 et seq. (1982).

41. 426 U.S. at 298, 96 S.Ct. at 1984, 48 L.Ed.2d at 652 (quoting Texas & P. Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 437, 27 S.Ct. 350, 354, 51 L.Ed. 553, 557 (1907)). In the latter case, the Court refused to recognize as viable a private damages action seeking reparations on account of alleged unreasonableness of an established rate subject to the Interstate Commerce Act, 49 U.S.C. § 27 (1982) (repealed), because such an action would frustrate a fundamental goal of that legislation—promotion of uniformity, and thus elimination of discrimination in rates. Id. at 446, 27 S.Ct. at 358, 51 L.Ed. at 561.

42. See Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra note 2, 527 F.Supp. at 137.

43. See note 66 infra.

44. Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra note 2, 527 F.Supp. at 137.

45. See Brief for Appellant at 5; Reply Brief for Appellant at 1.

46. See note 21 supra and accompanying text.

47. Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra note 2, 527 F.Supp. at 138.

48. See Brief for Appellant at 12–14; Brief for Appellee Sea-Land Service, Inc., at 17; Reply Brief for Appellant at 6.

49. Complaint, Nepera Chem., Inc. v. Sea-Land Serv., Inc., Civ. No. 79–3022 (D.D.C.) (filed Nov. 6, 1979) ¶ 2. Nepera is incorporated under the

of federal-court jurisdiction is apparent. That means that Nepera's claim is to be measured by local rather than federal law. As the Supreme Court has said,

> in an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.[50]

Moreover, as the Court has made equally plain, local law governs irrespective of whether that law is legislatively or judicially created.[51]

■ Our first step, then, is to ascertain the jurisdiction whose law is controlling, and for that purpose we must apply the choice-of-law rules of the District of Columbia.[52] Those rules call for an evaluation and a balancing of the interests of all jurisdictions having some stake in the litigation, and for selection of the law of the jurisdiction bearing the most significant relationship to the tortious occurrence and the litigants.[53] Applying the criteria approved

by the District's highest court,[54] District law seems the choice properly to be made. We recognize some degree of involvement of the interests of the states in which the present litigants respectively are incorporated, maintain their principal places of business, and normally conduct their operations. But the dominant factor in the case before us is that the acts and omissions of Sea-Land allegedly constituting negligence pertained to a tariff and an application for relief from freight overcharges, both of which were filed in the District of Columbia. Given the facts of this case, the District's interest as the place where the alleged negligence occurred [55] easily surpasses any interest of the states to which the one party or the other bore some other kind of totally unconnected relationship. We thus conclude that the District's substantive law must govern disposition of the tort issues in this case.

■ District law incorporates the "American Rule," under which a party may not be awarded attorneys' fees "unless a statute or enforceable contract provides for

laws of New York and maintains its principal place of business in that state. *Id.* Sea-Land is incorporated under the laws of Delaware and maintains its principal place of business in New Jersey. *Id.*

50. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141, 154 n. 31 (1975) (quoting 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.77[2] at 1712–1713 (2d ed. 1974)); see also *Sioux County v. National Sur. Co.,* 276 U.S. 238, 243, 48 S.Ct. 239, 241, 72 L.Ed. 547, 551 (1928).

51. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra* note 50, 421 U.S. at 259 n. 31, 95 S.Ct. at 1622 n. 31, 44 L.Ed.2d at 154 n. 31.

52. Federal courts in the District of Columbia sitting in diversity cases apply the substantive law of the forum on outcome-determinative issues. *Lee v. Flintkote Co.,* 193 U.S. App.D.C. 121, 124 n. 14, 593 F.2d 1275, 1278 n. 14 (1979) (adopting analogously the principles of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), for federal courts in the District of Columbia). Since for *Erie* purposes the forum's choice-of-law rules are substantive, *Klaxton Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480 (1941); *Steorts v. American Airlines, Inc.,*

207 U.S.App.D.C. 369, 372, 647 F.2d 194, 197 (1981), those of the District of Columbia are determinative. *Stancill v. Potomac Elec. Power Co.,* 240 U.S.App.D.C. 237, 240 n. 16, 744 F.2d 861, 864 n. 16 (1984); *Gray v. American Express Co.,* 240 U.S.App.D.C. 10, 16–17, 743 F.2d 10, 16–17 (1984); *Byers v. Burleson,* 230 U.S.App. D.C. 62, 65 n. 4, 713 F.2d 856, 859 n. 4 (1983); *Anchorage Hynning & Co. v. Moringiello,* 225 U.S.App.D.C. 114, 118–119, 697 F.2d 356, 360–361 (1983); *Steorts v. American Airlines, Inc., supra,* 207 U.S.App.D.C. at 372, 647 F.2d at 197; *Lee v. Flintkote Co., supra,* 193 U.S.App.D.C. at 124–125 n. 14, 593 F.2d at 1278–1279 n. 14.

53. See *Estrada v. Potomac Elec. Power Co.,* 488 A.2d 1359, 1361 & n. 2 (D.C.1985); *Carr v. Bio-Medical Applications,* 366 A.2d 1089, 1093 n. 3 (D.C.1976); *Myers v. Gaither,* 232 A.2d 577, 583–584 (D.C.1967), *aff'd in part and remanded on other grounds,* 131 U.S.App.D.C. 216, 404 F.2d 216 (1968).

54. See cases cited *supra* note 53.

55. See *Webster v. Sun Co.,* 790 F.2d 157, 160 (D.C.Cir.1986) (applying District of Columbia choice-of-law rules, District law governs libel action where, *inter alia,* allegedly libelous statement was "transmitted (or 'published') *only* in the District" (emphasis in original)).

an award of such fees."[56] Nepera has not steered us toward any statutory or contractual provision assisting its effort. Instead, Nepera relies upon [57] an exception to the American Rule, recognized by many jurisdictions, permitting a plaintiff to recover from the defendant reasonable attorneys' fees incurred in prior litigation against a third party where they were a natural consequence of the defendant's wrongful act.[58]

This exception has been applied both where the defendant breached a contract [59] and where, as alleged here, the defendant committed a tort,[60] and thereby compelled the plaintiff to litigate against a third party. Underlying the exception is recognition that the plaintiff's expenditures in the earlier suit are logically indistinguishable from other monetary losses caused by tortious conduct for which com-

---

**56.** *Cahn v. Antioch Univ.*, 482 A.2d 120, 132–133 (D.C.1984) (quoting *Washburn v. Washburn*, 475 A.2d 410, 413 (D.C.1984)). The reasons underlying the American Rule lead to the conclusion normally that litigation expenses other than attorneys' fees are similarly nonrecoverable. Since the two seem to go hand-in-hand, what we say in this opinion about attorneys' fees applies generally to other suit expenses as well.

**57.** Brief for Appellant at 11.

**58.** See *Ranger Constr. Co. v. Prince William County School Bd.*, 605 F.2d 1298, 1301 (4th Cir.1979) (applying Virginia law); *Southern Nat'l Bank v. Crateo, Inc.*, 458 F.2d 688, 696 (5th Cir.1972) (applying Texas law); *Phil Crowley Steel Corp. v. Sharon Steel Corp.*, 702 F.2d 719, 721 (8th Cir.1983) (applying Missouri law); *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277, 1285 (10th Cir.1969) (applying Kansas law); *Safeway Rental & Sales Co. v. Albina Engine & Mac. Works, Inc.*, 343 F.2d 129, 133 (10th Cir.1965) (applying Oklahoma law). See generally C. McCormick, Handbook on the Law of Damages §§ 66–68, at 246–253 (1983). The prior litigation against the third party distinguishes these cases from two other types in which the American Rule precludes recovery: (1) where the party victorious in a lawsuit attempts to recoup attorneys' fees as an element of damages in the same suit in which he triumphs, see, e.g., *Savage v. Pinderhughes*, 127 U.S.App.D.C. 222, 223, 382 F.2d 171, 172 (1967); *Wolf v. Cohen*, 126 U.S.App. D.C. 423, 426, 379 F.2d 477, 480 (1967); *Wooster Republican Printing Co. v. Channel 17, Inc.*, 533 F.Supp. 601, 623 (W.D.Mo.1981), *aff'd*, 682 F.2d 165 (8th Cir.1982); *Artvale, Inc. v. Rugby Fabrics, Corp.*, 232 F.Supp. 814, 825–828 (S.D.N.Y. 1964) (applying New York law), *aff'd*, 363 F.2d 1002, 1008 (2d Cir.1966); *Continental Ins. Co. v. Lynham*, 293 A.2d 481, 521 (D.C.1972) (applying District of Columbia law), and (2) where the prevailing party files a new suit against the losing party requesting reimbursement of the fees and costs incurred in the earlier suit, see, e.g., *Summit Valley Indus. v. Local 112, United Bhd. of Carpenters*, 456 U.S. 717, 726, 102 S.Ct. 2112, 2117, 72 L.Ed.2d 511, 519 (1982); *Lynchburg Traffic Bureau v. Smith's Transfer Corp.*, 339 F.2d 478, 481 (4th Cir.1964); *Landstrom v. Thorpe*, 189 F.2d 46, 54 (8th Cir.), *cert. denied*, 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620 (1951).

Unlike the effort in cases in these two groups, Nepera does not seek recoupment from the Commission, Nepera's opponent in the earlier litigation. Instead, Nepera endeavors to recover its expenses in the prior litigation from Sea-Land, which, though not a party thereto, is alleged to have necessitated, through its own negligence, Nepera's outlay therefor.

**59.** *Ranger Constr. Co. v. Prince William County School Bd.*, *supra* note 58, 605 F.2d at 1301; *Southern Nat'l Bank v. Crateo, Inc.*, *supra* note 58, 458 F.2d at 696; *Robert A. Reichard, Inc. v. Ezl. Dunwoody Co.*, 45 F.Supp. 153, 157 (E.D.Pa. 1942) (discussing New York law). See generally T. Sedgwick, A Treatise on the Measure of Damages § 240 at 480–484 (1920).

**60.** See, e.g., *Phil Crowley Steel Corp. v. Sharon Steel Corp.*, *supra* note 58, 702 F.2d at 721; *Wilshire Oil Co. v. Riffee*, *supra* note 58, 409 F.2d at 1285; *Waldinger Corp. v. Ashbrook-Simon-Hartley, Inc.*, 564 F.Supp. 970, 981–982 (C.D.Ill.1983) (applying Illinois law), *aff'd in part and remanded on other grounds sub nom. Waldinger Corp. v. CRS Group Eng'rs*, 775 F.2d 781 (7th Cir.1985); *Campus Sweater & Sportswear v. M.B. Kahn Constr. Co.*, 515 F.Supp. 64, 110–113 (D.S.C.1979) (applying South Carolina law), *aff'd without op.*, 644 F.2d 877 (4th Cir. 1981); *Fidelity Cas. Co. v. J.D. Pittman Tractor Co.*, 244 Ala. 354, 13 So.2d 669 (1943); *Murphy v. O'Donnell*, 63 A.2d 340, 342 (D.C.1948); *In re State Farm Mut. Auto. Ins. Co.*, 50 Mich.App. 71, 212 N.W.2d 821 (1973); *Security State Bank v. W.R. Johnston & Co.*, 204 Okla. 160, 228 P.2d 169 (1951); *Addy v. Bolton*, 257 S.C. 28, 183 S.E.2d 708 (1971); *DuPratt v. Black Hills Land & Abstract Co.*, 81 S.D. 637, 140 N.W.2d 386 (1966); *Pacific Coast Title Ins. Co. v. Hartford Accident & Indem. Co.*, 7 Utah 2d 377, 325 P.2d 906 (1958); *Thomason v. Mosrie*, 134 W.Va. 634, 60 S.E.2d 699 (1950); see also Restatement (Second) of Torts § 914(2) (1977) ("[o]ne who through the tort of another is required to [bring] an action against a third person is entitled to recover reasonable compensation for ... attorneys' fees ... incurred in the earlier action"). See generally Comment, *Recovery of Attorney Fees from Third Party Tortfeasors*, 66 Calif.L.Rev. 94 (1978).

pensatory damages will lie.[61] The effect of the exception is to put the plaintiff, who found it necessary to litigate with a third party as a result of the defendant's wrong, in the same position he would have occupied had he not been forced to do so. The exception permits the plaintiff to recover all of his losses flowing from the defendant's malfeasance—except, generally speaking, attorneys' fees accruing in the suit in which the recovery is sought [62]—and treats as a mere fortuity the fact that the plaintiff's damages arose from the prior litigation with the third party.

District law recognizes a cause of action for "wrongful involvement in litigation," which essentially is an analogue of the third-party exception to the American Rule.[63] The District allows a plaintiff in a tort action to recover, as damages, reasonable attorneys' fees incurred in earlier litigation with a third person "if the natural and proximate consequences of the defendant's tortious act were to involve the plaintiff in [that] litigation...." [64] All that is required is incurrence of the fees in prior litigation with a third party precipitated by the tortious conduct of the present defendant.[65]

These principles of District of Columbia law enable Nepera to pursue its claim against Sea-Land for the attorneys' fees incurred by Nepera in the litigation with the Commission respecting the freight overcharges. Nepera asserts that Sea-Land's conduct—its refusal to challenge the Commission's adverse decision—effectively forced Nepera to launch and maintain an ultimately successful proceeding in this court for review and reversal of that decision. Had Sea-Land been willing to assume that burden, Nepera would not have had to pay the fees amassed in that proceeding.[66] An award to Nepera in the amount of its financial outlay would merely elevate it to the position—except for expenses generated in the instant case—that it would have been in had Nepera not been required to litigate against the Commission. Summary judgment on this claim was therefore inappropriate, and Nepera must now be afforded an opportunity to establish its right to recovery.[67]

**61.** C. McCormick, *supra* note 58, § 66 at 246; T. Sedgwick, *supra* note 59, § 236 at 473.

**62.** The American Rule generally bars an award of attorneys' fees against the losing party in the same or a subsequent action. See note 56 *supra* and accompanying text.

**63.** See *Answering Serv., Inc. v. Egan,* 251 U.S. App.D.C. 396, 398, 785 F.2d 1084, 1086 (1986); *Auxier v. Kraisel,* 466 A.2d 416, 420 (D.C.1983); *Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.,* 451 A.2d 66, 68–69 (D.C.1982); *Biddle v. Chatel,* 421 A.2d 3, 7 (D.C.1980).

**64.** *Biddle v. Chatel, supra* note 63, 421 A.2d at 7 (quoting *Brem v. United States Fidelity & Guar. Co.,* 206 A.2d 404, 407 (D.C.1965) (footnote omitted)).

**65.** The essential elements of the right to recovery are "(1) the plaintiff must have incurred the fees in the course of prior litigation, (2) ordinarily that litigation must have occurred between the plaintiff and the third party who is not the defendant in the present action, and (3) the plaintiff must have become involved in the underlying litigation as a consequence of the defendant's tortious act." *Auxier v. Kraisel, supra* note 63, 466 A.2d at 420.

**66.** Indeed, had Sea-Land simply filed the application for refund and waiver somewhat sooner, the proceeding for review of the Commission's decision would probably have been avoided. As the administrative law judge noted, "had Sea-Land not waited until the very last day on which it was permitted by law to file (mail) the application, it might have been possible to call Sea-Land's attention to the fatal jurisdictional defect so that Sea-Land could file a corrected conforming tariff and a new application before the statutory 180-day time period expired." *ALJ Decision, supra* note 13, at 11 n. 8, J.App. 46 n. 8.

**67.** The federal appellees contend that this court's reversal of the Commission's order denying Sea-Land's rate-correction application vindicated Sea-Land's behavior as a matter of law. Brief for Appellees Federal Maritime Commission and United States at 16. Accordingly, so the theory goes, the allegation of negligence by Sea-Land is now moot. *Id.* We find the argument unpersuasive. Our reversal of consistent but erroneous Commission precedent has no bearing on whether Sea-Land should have prosecuted a petition for review of the Commission's decision denying leave to refund and waive. Nepera must be given a chance to establish a breach of duty on this score and, if successful, the damages consequent thereupon.

## IV. PUNITIVE DAMAGES

The District Court granted summary judgment for Sea-Land on Nepera's demand for punitive damages not only in the belief that Section 18(b)(3) of the Shipping Act affords the exclusive remedy for Nepera's grievances, but also in the view that Nepera had not put forth facts sufficient to legally support an award of such damages.[68] We have already addressed the court's Section 18(b)(3) theory and found it erroneous.[69] We affirm dismissal of the claim for punitive damages, however, on the ground that, as a matter of law, Nepera failed to establish an adequate factual foundation for such an award.[70]

■ Punitive damages may be assessed to penalize a defendant for outrageous conduct, and to deter him and others from similar activity in the future.[71] Such damages—also aptly termed "exemplary" damages—are appropriate when the defendant's misbehavior demonstrates a particularly reckless disregard for the rights of another.[72] Under the law of the District of Columbia, which we are duty bound to accept,[73] "even gross negligence is insufficient;"[74] punitive damages are awardable only where a defendant's conduct is " 'willful and outrageous,' constitute[s] 'gross fraud,' or [is] 'aggravated by evil motive, actual malice, deliberate violence or oppression ...' "[75]

In taking stock of the District Court's grant of summary judgment, we must determine whether Nepera raised a genuine issue as to any material fact[76] and whether

---

68. *Nepera Chem., Inc. v. Sea-Land Serv., Inc., supra* note 2, 527 F.Supp. at 137.

69. See Part II *supra.*

70. Because we affirm the District Court's punitive-damages ruling on that basis, we need not consider Sea-Land's contention that recovery of such damages would contravene a major objective of the Shipping Act: prevention of discrimination among shippers. See Brief for Appellee Sea-Land Serv., Inc., at 20–21 (citing *Keough v. Chicago & N. Ry.,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922); *Farr Co. v. Seatrain Lines,* 20 F.M.C. 411, 418 (1978)). But see *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 219 n. 3, 86 S.Ct. 781, 785 n. 3, 15 L.E.2d 709, 714 n. 3 (1966) (rejecting argument that treble-damage awards to shippers bringing antitrust actions would frustrate Shipping Act's "policy of equality of treatment for shippers").

71. E.g., *Rieser v. District of Columbia,* 183 U.S.App.D.C. 375, 394 n. 100, 563 F.2d 462, 481 n. 100 (1977) (applying District of Columbia law), *modified on other grounds,* 188 U.S.App.D.C. 384, 385, 580 F.2d 647, 648 (*en banc* 1978); *Knippen v. Ford Motor Co.,* 178 U.S.App.D.C. 227, 236, 546 F.2d 993, 1002 (1976) (same); *Harris v. Wagshal,* 343 A.2d 283, 289 (D.C.1975); *Franklin Inv. Corp. v. Homburg,* 252 A.2d 95, 98 (D.C.1969).

72. See generally W. Keeton, D. Dobbs, R. Keeton & D. Owens, Prosser & Keeton on Torts § 2 at 9–10 (5th ed. 1984).

73. See discussion *supra* text at notes 53–55.

74. *Rieser v. District of Columbia, supra* note 71, 183 U.S.App.D.C. at 394 n. 100, 563 F.2d at 481 n. 100 (applying District of Columbia law).

75. *Mariner Water Renaturalization, Inc. v. Aqua-Purification Sys., Inc.,* 214 U.S.App.D.C. 248, 253, 665 F.2d 1066, 1071 (1981) (applying District of Columbia law) (quoting *Price v. Griffin,* 359 A.2d 582, 589 (D.C.1976)).

76. *Habib v. Raytheon Co.,* 199 U.S.App.D.C. 11, 15, 616 F.2d 1204, 1208 (1980). We recognize that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue [of material fact], summary judgment must be denied" even though the non-moving party's evidentiary presentation has not itself raised a factual issue. Fed.R.Civ.P. 56(e) advisory committee note on 1963 amendment, *reprinted in* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.01[14] at 56–22 (1985). See generally *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155–156 (1970); *Catrett v. Johns-Manville Sales Corp.,* 244 U.S.App.D.C. 160, 163, 756 F.2d 181, 184, *cert. granted sub nom. Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 342, 88 L.Ed.2d 285 (1985); *Weisberg v. United States Dep't of Justice,* 200 U.S.App.D.C. 312, 315, 627 F.2d 365, 368 (1980) ("settled in federal procedural law that '[t]he party seeking summary judgment has the burden of showing there is no genuine issue of material fact ... even if the opponent presents no conflicting matter' " (citation omitted)). We need not consider this question, however, as Nepera has not contended that Sea-Land failed to submit a properly supported motion. See Brief for Appellant at 21–24; Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment, *Nepera Chem., Inc. v. Sea-Land Serv., Inc.,* Civ.No. 79–3022 (D.D.C.) (filed April 28, 1980) at

the substantive law was correctly applied.[77] In determining whether there was such an issue, we must resolve all inferences following reasonably from the evidence in favor of Nepera,[78] and we may not affirm unless the propriety of the summary disposition is clear.[79] Because an award of summary judgment reflects "a determination of law rather than fact," we do not defer to the District Court's conclusions but consider the matter de novo.[80]

 On this appeal, Nepera insists that Sea-Land promised to "protect" the pre–1978 rate for picolines; that it knowingly submitted a deficient application for leave to waive the overcharges; that, by deliberately filing the application on the last day possible, it foreclosed any chance of correcting it; that it disavowed any responsibility for appealing the Commission's adverse decision; and that this chain of events demonstrated a reckless disregard for the effects of its actions on Nepera.[81] In opposing Sea-Land's motion in the District Court, Nepera relied primarily on an affidavit submitted by Edith Sorderberg, its Export Traffic Coordinator,[82] to support

these characterizations of Sea-Land's behavior. Sorderberg averred that prior to any Commission action on the Section 18(b)(3) application, William Eisenlohr, Sea-Land's Manager for Specific Commodities, told her that Sea-Land was aware that the $162.25 per weight-ton rate that Sea-Land had utilized in connection with the application did not correspond precisely to the earlier $6.85 per hundredweight rate.[83] As Sorderberg recalled the conversation, Eisenlohr "said that the difference was 'negligible—just a few cents per 100 lbs.' and that the difference was probably due to the fact that the rate was now on a weight-ton basis rather than a 100 lbs. basis."[84] The affidavit also reported that after the Commission's administrative law judge had denied Sea-Land's rate-correction application,[85] Sea-Land representatives conceded that they had "round[ed] up"[86] in calculating the new rate, and thus had "made mistakes in [the] handling of this matter before the FMC ..."[87] On the basis of these purported admissions, and the fact that Sea-Land was a party to an earlier Commission proceeding assertedly prohibiting any deviation from a promised rate in a

12–14 [hereinafter cited as Plaintiff's Opposition].

77. Fed.R.Civ.P. 56(c); *Bloomgarden v. Coyer,* 156 U.S. App.D.C. 109, 114, 479 F.2d 201, 206 (1973).

78. *Elder v. United States,* 245 U.S.App.D.C. 404, 406, 761 F.2d 807, 809 (1985). See generally *Pharo v. Smith,* 621 F.2d 656, 664 (5th Cir.) ("[t]he inferences to be drawn, however, are limited by a standard of reasonableness"), *modified on other grounds,* 625 F.2d 1226 (5th Cir. en banc 1980); *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1144 (7th Cir.), *cert. denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983); *Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680 (9th Cir.1985) ("[a] party opposing summary judgment is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth" (emphasis in original)).

79. *Habib v. Raytheon Co., supra* note 76, 199 U.S.App.D.C. at 15, 616 F.2d at 1208; *United States v. General Motors Corp.,* 171 U.S.App.D.C. 27, 49, 518 F.2d 420, 442 (1975); *Washington v. Cameron,* 133 U.S.App.D.C 391, 395–396, 411 F.2d 705, 709–710 (1969). Any doubt must be resolved against summary judgment. *Dewey v. Clark,* 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (1950).

80. *Liberty Lobby, Inc. v. Anderson,* 241 U.S.App. D.C. 246, 254–255, 746 F.2d 1563, 1571–1572 (1984), *cert. granted sub nom. Anderson v. Liberty Lobby, Inc.,* — U.S. —, 105 S.Ct. 2672, 86 L.Ed.2d 691 (1985); see also *Luckett v. Bethleham Steel Corp.,* 618 F.2d 1373, 1377 (10th Cir. 1980).

81. Brief for Appellant at 22–23.

82. Affidavit of Edith Sorderberg, *Nepera Chem., Inc. v. Sea-Land Serv., Inc.,* Civ.No. 79–3022 (D.D.C.) (filed Apr. 28, 1980).

83. *Id.* at 3.

84. *Id.*

85. See note 13 *supra.*

86. Affidavit of Edith Sorderberg, *supra* note 82, at 4.

87. *Id.*

Section 18(b)(3) application, *Munoz y Cabrero v. Sea-Land Service, Inc.*,[88] Nepera contends that there was a genuine issue of fact precluding summary judgment: whether Sea-Land had utilized the disparity in rates in a deliberate attempt to secure an adverse Commission decision enabling it to escape the overcharge relief promised Nepera.[89]

We reject this tortured attempt to create issues of fact where none exist. It would not be reasonable[90] to infer that Sea-Land purposely filed a faulty application from the bare fact that Sea-Land officials acknowledged a "negligible" difference resulting from "rounding up."[91] Any such inference would be especially anomalous given the fact that this court itself concluded, after reviewing Sea-Land's computa-

tions, that the very difference Nepera complains of did "not reflect a failure to file" the rate that Sea-Land and Nepera had agreed upon.[92] We think it would be equally unreasonable to infer an evil motive from Sea-Land's involvement in *Munoz y Cabrero*.[93] Because this court has previously characterized that proceeding as both "legally distinct"[94] and "factually different"[95] from the one launched by the application submitted on behalf of Nepera, we do not see how it aids Nepera's cause. In the absence of any genuine issue of material fact as to whether the rate incorporated into the Section 18(b)(3) application was the product of malicious or atrocious conduct, any claim for punitive damages predicated upon Sea-Land's last-day filing of the application[96] or its refusal to seek reversal of the adverse Commission decision[97] must be

---

88. 20 F.M.C. 152 (1977).

89. Brief for Appellant at 22.

90. See note 78 *supra* and accompanying text.

91. Nor would it be reasonable to infer a sinister intent from the statement that "mistakes" had been made. See text *supra* at note 87. A mere mistake in calculation falls far short of the sort of outrageous behavior required for liability for punitive damages. See text *supra* at note 75.

92. *Nepera Chem., Inc. v. FMC, supra* note 13, 213 U.S.App.D.C. at 175 n. 7, 662 F.2d at 20 n. 7.

93. *Supra* note 88.

94. *Nepera Chem., Inc. v. FMC, supra* note 13, 213 U.S.App.D.C. at 177–178 n. 12, 662 F.2d at 22–23 n. 12.

95. *Id.* We distinguished that proceeding in the following manner:

The corrected tariff in the *Munoz* case contained a rate "which was never agreed upon or intended to be filed." Moreover, because the new rate was substantially lower than that intended to be filed, there was a clear danger of rebate to the shipper. In addition, no complex rate conversion of any kind was involved. The case was a clear example of a carrier filing a corrective tariff containing a rate which had not been agreed upon, had not been intended, and could not arguably be deemed to "reflect" the promised rate. In our case, on the other hand, the corrected rate was that agreed upon and intended, the slight overcharge eliminates the possibility of rebate, and the justifiable reasons for the minor

charge variation make it certain that the new rate reflects the promised rate.

*Nepera Chem., Inc. v. FMC, supra* note 13, 213 U.S.App.D.C. at 177–178 n. 12, 662 F.2d at 22–23 n. 12 (citation omitted).

96. Nepera relies in this regard on the statement of the Commission's administrative law judge that the difficulty posed by the rate Sea-Land utilized could have been obviated had Sea-Land filed the application early enough to allow submission of another application after the adverse administrative decision. Brief for Appellant at 22 n. 9; see also note 66 *supra*. Sea-Land's action in utilizing the full statutory period for the filing, if culpable at all, evinces no more than a lack of caution, and certainly is incapable of generating an issue of fact as to whether its conduct could be characterized as outrageous.

97. Nepera does not contend that Sea-Land ever represented that its efforts to revise the picolines rate would extend beyond the Commission. See Affidavit of Edith Soderberg, *supra* note 82, at 3 (Sea-Land represented it "would file an Application with the Federal Maritime Commission") & 4 ("Sea-Land would file Exceptions to the Administrative Law Judge's decision"). Nor does Nepera argue that Sea-Land attempted to deprive Nepera of the opportunity to seek review in this court. Indeed, Nepera concedes that a Sea-Land official both telephoned and wrote to Nepera after the Commission issued its decision "to say that if Nepera wanted to pursue the matter, it had approximately 30 days remaining in which to file a petition for review ..." *Id.* at 4–5.

deemed insufficient as a matter of law.[98] Accordingly, we sustain the District Court's determination that summary judgment for Sea-Land on Nepera's punitive-damages claim was warranted.

## V. ATTORNEYS' FEES IN THIS CASE

One matter remains. Nepera seeks an award of attorneys' fees incurred in litigating the instant case.[99] Nepera recognizes that this effort falls squarely within the purview of the American Rule, but argues that Sea-Land's behavior brings it within the "bad faith" exception to the rule. That exception allows an assessment of attorneys' fees when the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...."[100] Federal courts have applied this exception both when bad faith occurred in connection with the litigation[101] and when it was an aspect of the conduct that gave rise to the lawsuit.[102]

**98.** See, e.g., *Kahal v. J.W. Wilson & Assocs., Inc.*, 218 U.S.App.D.C. 156, 158, 673 F.2d 547, 549 (1982) (allegation that breach of contract was motivated by malice insufficient for punitive damages as a matter of law); *Rieser v. District of Columbia, supra* note 71, 183 U.S.App.D.C. at 395, 563 F.2d at 482; *Berroyer v. Hertz,* 672 F.2d 334, 342 (3d Cir.1982) (though defendant's conduct was culpable enough to establish negligence, punitive damages not available); *Peacock v. J.C. Penney Co.*, 764 F.2d 1012, 1015 (4th Cir.1985); *Gorman v. Southeastern Fidelity Ins. Co.*, 775 F.2d 655, 659–660 (5th Cir.1985); *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1537 (11th Cir.1985) (conduct did not "rise to the level of reckless or offensive character" required for punitive damages); cf. *Pierce v. Capital Cities Communications, Inc.*, 576 F.2d 495, 508 n. 59 (3d Cir.), *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978) ("[a]t most, on the facts here, it might be said that the defendant [ ] acted carelessly or negligently").

**99.** See Brief for Appellant at 20.

**100.** *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703, 714 (1974) (dicta); accord *Summit Valley Indus. v. Local 112, United Bhd. of Carpenters, supra* note 58, 456 U.S. at 721, 102 S.Ct. at 2115, 72 L.Ed.2d at 516; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488, 501 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra* note 50, 421 U.S. at 258–259, 95 S.Ct. at 1622, 44 L.Ed.2d at 154; *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702, 707 (1973); *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *American Employers Ins. Co. v. American Sec. Bank*, 241 U.S.App.D.C. 379, 388, 747 F.2d 1493, 1502 (1984); *Eureka Inv. Corp. v. Chicago Title Ins. Co.*, 240 U.S.App.D.C. 88, 101–102, 743 F.2d 932, 945–946 (1984).

**101.** This type of bad faith may manifest itself in a variety of ways, such as in the filing of a claim or motion, see *Lipsig v. National Student Marketing Corp.*, 214 U.S.App.D.C. 1, 5, 663 F.2d 178, 182 (1980) (per curiam); *Copeland v. Martinez,* 195 U.S.App.D.C. 399, 402–403, 603 F.2d 981, 984–985 (1979); *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980); *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977); *Perichak v. International Union of Elec., Radio and Mach. Workers*, 715 F.2d 78, 80 (3d Cir.1983); *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269–1270 (7th Cir.1983), or in actions undertaken during the course of the litigation, see *Lipsig v. National Student Marketing Corp., supra*, 214 U.S.App. D.C. at 3, 663 F.2d at 180; *Weinberger v. Kendrick*, 698 F.2d 61, 80–81 (2d Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Browning Debenture Holders' Comm. v. DASA Corp., supra*, 560 F.2d at 1088–1089; *Straub v. Vaisman & Co.*, 540 F.2d 591, 600 (3d Cir.1976); *Aero Corp. v. Department of Navy*, 558 F.Supp. 404, 418 (D.D.C.1983). See generally Comment, *Attorneys' Fee Awards to Complex Litigation Defendants*, 77 Nw. U.L.Rev. 818, 824–826 (1983).

**102.** See *Siegel v. William E. Bookhultz & Sons*, 136 U.S.App.D.C. 138, 143–144, 419 F.2d 720, 725–726 (1969); *Schlein v. Smith*, 82 U.S.App. D.C. 42, 44, 160 F.2d 22, 25 (1947); *Rolax v. Atlantic Coast Line R.R.*, 186 F.2d 473, 481 (4th Cir.1951); *Miller v. Aaacon Auto Transp., Inc.*, 447 F.Supp. 1201, 1206–1207 (S.D.Fla.1978); *Burnaman v. Bay City Indep. School Dist.*, 445 F.Supp. 927, 938 (S.D.Tex.1978); see also *Fitzgerald v. Hampton*, 545 F.Supp. 53, 57–58 (D.D. C.1982) (attorneys' fees awarded for defendants' bad faith in prelitigation conduct pursuant to Equal Access to Justice Act, Pub.L. No. 96–481, tit. II, 94 Stat. 2327 (1981) (codified at 28 U.S.C. § 2412(b) (1982)), which authorizes attorneys' fees against the United States "to the same extent that any other party would be liable under the common law"). But see *Shimman v. Local 18, Int'l Union of Operating Eng'rs*, 744 F.2d 1226, 1228–1233 (6th Cir. *en banc* 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985) ("bad faith exception to the American Rule does not allow an award of attorney fees based only on bad faith in the conduct giving rise to the underlying claim").

Nepera bases its request for fees on the latter strand of the bad-faith exception.[103]

The common law of the District of Columbia embraces these principles. The District of Columbia Court of Appeals has declared that an assessment of attorneys' fees is warranted " 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' "[104] Circumstances indicative of bad faith, the court has said, are present " 'where a party brings or maintains an unfounded suit or withholds action to which the opposing party is patently entitled....' "[105] Indeed, there appears to be little or no difference between District of Columbia and federal common law on the subject.

■ Crucial to evaluation of Nepera's request is the Supreme Court's admonition, which the District of Columbia Court of Appeals has cited with approval,[106] that the underlying rationale of fee-shifting upon a showing of bad faith is punishment of the wrongdoer rather than compensation of the victim.[107] For that reason, the standard

for a finding of bad faith is stringent.[108] The cases, both federal[109] and District of Columbia,[110] hold that attorneys' fees will be awarded only when extraordinary circumstances or dominating reasons of fairness so demand.

■ The considerations underlying the bad-faith exception do not counsel fee-shifting here. Quite to the contrary, an award of attorneys' fees to Nepera could actually work an injustice. Nepera's bad-faith fee claim rests on the very same behavior[111] we have already held to be legally insufficient to permit an award of punitive damages[112]—damages which, like attorneys' fees in the present context, are designed to punish certain kinds of wrongdoing.[113] Just as we find, as a matter of law, that the record does not furnish an adequate foundation for punitive damages, we must conclude that it falls short of establishing Nepera's entitlement to recoupment of its attorneys' fees in litigating the case at bar.

**103.** Brief for Appellant at 23.

**104.** *In re Antioch Univ.,* 482 A.2d 133, 136 (D.C. 1984) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra* note 50, 421 U.S. at 258–259, 95 S.Ct. at 1622, 44 L.Ed.2d at 154 (citation omitted)); see also *Zapata v. Zapata,* 499 A.2d 905, 910 (D.C.1985); *Wisconsin Ave. Assocs. v. 2720 Wis. Ave. Coop. Ass'n,* 441 A.2d 956, 968 (D.C.), *cert. denied,* 459 U.S. 827, 103 S.Ct. 62, 74 L.Ed.2d 64 (1982); *American Fed'n of State, County & Mun. Employees v. Ball,* 439 A.2d 514, 514–515 (D.C.1981); *Bay Gen. Indus. v. Johnson,* 418 A.2d 1050, 1057–1058 & n. 20 (D.C.1980).

**105.** *Cahn v. Antioch Univ., supra* note 56, 482 A.2d at 133 (quoting *1901 Wyo. Ave. Coop. Ass'n v. Lee,* 345 A.2d 456, 464–465 (D.C.1975) (citation omitted)); see also *Wisconsin Ave. Assocs. v. 2720 Wis. Ave. Coop. Ass'n, supra* note 104, 441 A.2d at 968; *American Fed'n of State, County & Mun. Employees v. Ball, supra* note 104, 439 A.2d at 516; see also *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., supra* note 100, 417 U.S. at 129, 94 S.Ct. at 2165, 40 L.Ed.2d at 714.

**106.** *Kasachkoff v. Ross H. Finn Co.,* 408 A.2d 993, 995 (D.C.1979).

**107.** *Hall v. Cole, supra* note 100, 412 U.S. at 5, 93 S.Ct. at 1946, 36 L.Ed.2d at 707; see also *Lipsig v. National Student Marketing Corp., supra* note 101, 214 U.S.App.D.C. at 3, 663 F.2d at 180.

**108.** See *Adams v. Carlson,* 521 F.2d 168, 170 (7th Cir.1975); see also *Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co., supra* note 100, 240 U.S.App.D.C. at 102, 743 F.2d at 946 (diversity case) (bad faith exception "is a narrow one, ... to be applied only in exceptional circumstances" (footnote omitted)).

**109.** *Fleischmann Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 479 (1967); accord *Roadway Express, Inc. v. Piper, supra* note 100, 447 U.S. at 766–767, 100 S.Ct. at 2464, 65 L.Ed.2d at 501–502; *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391–392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593, 606 (1970).

**110.** *Launay v. Launay, Inc.,* 497 A.2d 443, 450 (D.C.1985); *Andrews v. District of Columbia,* 443 A.2d 566, 569 (D.C.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982); *Kasachkoff v. Ross H. Finn Co., supra* note 106, 408 A.2d at 995.

**111.** Plaintiff's Opposition, *supra* note 76, at 12–14.

**112.** See text *supra* at notes 90–98.

**113.** Compare text *supra* at note 71 with text *supra* at notes 106–107.

We thus end our journey through this appeal. The Shipping Act does not bar Nepera's common-law action for compensatory damages, and those damages permissibly may include attorneys' fees and other expenses incurred by Nepera in its earlier litigation against the Commission. Accordingly, we reverse the District Court's judgment to that extent. We affirm, however, the District Court's holdings that Nepera's claim for punitive damages, and its claim for attorneys' fees incurred in the instant case, are legally unwarranted. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*